361 So.2d 1260 (1978)
A & P BOAT RENTALS, INC., et al.
v.
Alwynn J. CRONVICH et al.
No. 12031.
Court of Appeal of Louisiana, First Circuit.
June 12, 1978.
Rehearing Denied August 31, 1978.
Writ Refused October 20, 1978.
*1261 Thomas S. Halligan, Asst. Atty. Gen., Baton Rouge, of counsel for defendant-appellant, Louisiana Tax Commission.
Paul G. Moresi, Asst. Dist. Atty., Abbeville, of counsel for defendant-appellee, Euda Delcambre, Sheriff & Ex-Officio Tax Collector of Vermilion Parish and Lexie J. Belaire, Assessor of Vermilion Parish.
Steven F. Griffith, Destrehan, of counsel for defendant-appellee, Julius B. Sellers, Jr., Sheriff & Ex-Officio Tax Collector for St. Charles Parish.
Stanwood R. Duval, Jr., Houma, of counsel for plaintiff-appellant, A & P Boat Rentals, Inc.
Jerome J. Barbera, III, Asst. Dist. Atty., Thibodaux, of counsel for defendant-appellee, Cyrus Bobby Tardo, Sheriff & Ex-Officio Tax Collector of Lafourche Parish, and Hubert P. Robichaux, Assessor for Lafourche Parish.
Walter E. Kollin, Metairie, of counsel for defendant-appellant, Lawrence A. Chehardy, Assessor of Jefferson Parish.
Larry C. Pieno, Marrero, of counsel for defendant-appellant, Alwynn J. Cronvich, Sheriff & Ex-Officio Tax Collector of Jefferson Parish.
Victor E. Bradley, Jr., Norco, of counsel for defendant-appellee, Clyde Gisclair, Assessor of St. Charles Parish.
Before LOTTINGER, EDWARDS and PONDER, JJ.
*1262 LOTTINGER, Judge.
This case involves the ad valorem taxation of vessels engaged in offshore oil and gas production. Plaintiffs[1], Louisiana corporations, are the owners of the vessels being taxed by the defendants, assessors[2] and sheriffs[3] of various south Louisiana parishes, as well as the Louisiana Tax Commission. All of the plaintiffs and several of the defendants are appealing. The trial judge found the vessels owned by the plaintiffs to be taxable and determined the tax situs to be the domicile of the owners. Plaintiffs are appealing the issue of the taxing of the vessels, whereas the defendants are appealing the determination of the tax situs.
The record points out that plaintiffs own various types of vessels fulfilling different functions for oil and gas operations in the Gulf of Mexico. Basically these vessels fall into four categories, (1) crewboats, which act as taxis, (2) standby vessels, which remain with the rigs and platforms, (3) utility vessels, which carry supplies and men between platforms, and (4) survey and drilling vessels, which make surveys and take soil samples. These boats are primarily rented to oil and gas companies who dispatch them from various ports in Louisiana.
In 1975 and 1976 the owners of the vessels paid the ad valorem taxes to the various parishes under protest, LSA-R.S. 47:2110, claiming an exemption under Art. 7, § 21(C)(16) La.Const. (1974). Alternatively, plaintiffs claim that the vessels have no tax situs in Louisiana, that the vessels are constantly engaged in interstate commerce, and that they are, therefore, not subject to taxation by the respective parishes. Further in the alternative, plaintiffs claim that, in the event the vessels are found taxable, they should only be taxed in proportion to the amount of time spent within the state of Louisiana. Finally, plaintiffs additionally claim in the alternative that, in the event the vessels are taxable and not taxable proportionately, the vessels should be valued uniformly and taxed only at the domicile of the owner of the vessels.
In appealing the plaintiffs contend the trial judge erred in finding (1) the vessels were not exempt from ad valorem taxation, (2) the vessels had situs for taxation even though they were engaged in interstate and foreign commerce, and (3) the vessels would not be taxed proportionately to the time spent in the taxing parish. On the other hand, the defendants in appealing argue that the trial judge erred in finding (1) the situs for taxation to be the domicile of the owners of the vessels, (2) the refund of protested taxes to be to the plaintiffs and not to the proper taxing parish, and (3) in taxing court costs against the defendants beyond stenographic cost.

PLAINTIFFS' ERROR NO. 1
Plaintiffs-appellants argue that these vessels are exempt from all ad valorem taxation since they are involved in the transportation of passengers and goods beyond the seaward boundaries of Louisiana, citing Art. 7, § 21(C)(16) La.Const. (1974) which provides:
"Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property *1263 and no other shall be exempt from ad valorem taxation:

* * * * * *
"(C) * * *
"(16) ships and oceangoing tugs, towboats, and barges engaged in international trade and domiciled in Louisiana ports. However, this exemption shall not apply to harbor, wharf, shed, and other port dues or to any vessel operated in the coastal trade of the states of the United States."
It is further argued that a significant change was made in the terminology from "overseas trade and commerce" used in Art. 10, § 3, La.Const. (1921) to "international trade" as used in Art. 7, § 21(C)(16) La. Const. (1974). Appellants apparently contend that overseas trade was that between different nations, whereas, they argue that international trade is that beyond the "seaward boundaries" of the state, citing 43 U.S.C.A. § 1312 (1953) which defines seaward boundary of the states, and that state tax laws do not apply to the outer continental shelf 43 U.S.C.A. § 1333 (1975).
Exemptions from taxation are to be strictly construed against the person claiming the exemption, and any plausible doubt is fatal. In like manner, an exemption being an exceptional privilege, it must be clearly, unequivocally and affirmatively established. Ethyl Corp. v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir. 1977), writ refused 353 So.2d 1035 (La.1978).
We do not agree that the delegates to the Constitutional Convention by the changing of the terminology "overseas trade and commerce" to "international trade" intended any change in the meaning of these terms. Appellants have not cited to this Court any debate from the Constitutional Convention in support of this argument, nor have we been able to find any. We are convinced that the delegates intended no distinction, and thus the terminology is synonymous.
"International commerce" or "commerce with foreign nations" has been described at 15 C.J.S. Commerce, § 3 as follows:
"While commerce with foreign nations, sometimes referred to as `international commerce', has been described as commerce of the United States with foreign nations, it has been said to mean commerce between citizens of the United States and citizens or subjects of foreign government, as individuals. It means trade and intercourse in all its branches, and embraces every species of commercial intercourse between the United States and foreign nations, including transportation, and it comprehends transportation from a foreign country into the United States, but is limited to commerce and transactions which, either immediately or at some stage of their progress, are extraterritorial. [Footnotes omitted]"
Since appellants' vessels do not participate in commercial intercourse with foreign countries, they cannot be found to be "engaged in international trade".
Appellants next argue that since Art. 7, § 21(C)(16) La.Const. (1974) excludes "coastal trade" from this exemption, and since "coastal trade" means within the three miles limit, that trade beyond the three miles limit is not coastal trade and thus exempt.
Black's Law Dictionary, Fourth Edition, defines coasting trade as "commerce and navigation between different places along the coast of the United States. Commercial intercourse between different districts in different states, different districts in same state, or different places in same district, on seacoast or on navigable river."
We find no necessity to determine whether plaintiffs-appellants are engaged or not in "coastal trade" to resolve whether they are eligible for this exemption. The only exemption provided is that for "international trade", and since we have already concluded that these vessels are not engaged in international trade, they are not eligible for the exemption.

PLAINTIFFS' ERROR NO. 2
The trial judge in his written reasons said:

*1264 "Plaintiffs' contention that the vessels have no situs in Louisiana, as they are constantly engaged in interstate and foreign commerce lacks merit. First, there is no evidence in the record that these vessels are `constantly engaged in interstate and foreign commerce'. Even if there were such evidence, the situs of property for purposes of taxation is the state of the domicile of the owner, unless such property has acquired a tax situs in another state. A State may tax all of the property of a domiciliary corporation, even that property located outside the taxing state, so long as that property is not subject to double taxation. Northwest Airlines v. State of Minnesota, 322 U.S. 292, 64 S.Ct. (1944) 950 [88 L.Ed. 1283]; Central Railroad Co. of Penn. v. Commonwealth of Penn., 370 U.S. 607, 82 S.Ct. 1297 [8 L.Ed.2d 720] (1962).
"There is no indication in the record that these vessels are being taxed anywhere except Louisiana; therefore, these vessels have acquired no tax situs in other states. Since these vessels are being taxed only in Louisiana and there is no contention that any particular vessel is subject to taxation by more than one parish in a particular year, the property is not subject to double taxation. Since it is not subject to double taxation, it follows that Louisiana may tax the property belonging to domestic corporations, no matter where that property is located.
"The tax situs of the vessels in question is the State of Louisiana, the state of domicile of their owners. For that reason, this Court finds that the State of Louisiana may properly levy an ad valorem property tax on these vessels."
We find no error.

PLAINTIFFS' ERROR NO. 3
In the alternative the plaintiffs submit that these vessels should be taxed proportionately to the time spent within the coastline of Louisiana, citing LSA-R.S. 47:1982 and Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949) rehearing denied 336 U.S. 928, 69 S.Ct. 653, 93 L.Ed. 1089 (1949).
LSA-R.S. 47:1982[4] provides:
"Ferry boats, boats, tugs, barges or other watercraft and all such property used in connection with the water transportation of persons or property of all kinds and character between termini situated in more than one parish or municipality, as defined above, shall be assessed proportionately in each such parish or municipality by the assessing authorities thereof and there subject to taxation by such parish or municipality; provided, that where such ferry boats and such water transportation equipment are situated and operate only within the boundaries of one such parish or municipality such property shall be so assessed and taxed therein only."
The obvious purpose of LSA-R.S. 47:1982 is to preclude taxation by more than one parish or municipality. In finding this statute not applicable, the trial judge reasoned that these vessels do not travel a more or less fixed route between different parishes. No argument is made that these vessels are taxed by more than one parish. Irrespective the reasoning, we agree that this statute is not applicable to this situation.
We also find that Ott v. Mississippi Valley Barge Line Co., supra, and Pullman's Palace-Car Co. v. Commonwealth of Pennsylvania, 141 U.S. 18, 11 S.Ct. 876, 35 L.Ed. 613 (1891) are both inapposite in that the vessels attempted to be taxed here are not engaged in interstate commerce.
We, therefore, conclude that there is no Louisiana taxing statute authorizing the proportioning of ad valorem taxes on vessels engaged in offshore gas and oil production, and thus, find no error on the part of the trial judge in refusing to proportion these taxes.

DEFENDANTS' ERROR NO. 1
The trial judge found the tax situs of these vessels to be the parish of the *1265 domicile of the owner by analogizing these vessels to intangibles. Additionally, he justifies his holding by reasoning that since these vessels "may be found at any place at any given time", they do not receive the contemplated benefits from the taxing parish as envisioned by the legislature, and thus should be taxed at the owner's domicile.
Things that are corporeal or tangible cannot be incorporeal or intangible, LSA-C.C. art. 460, thus, the trial judge was in error in analogizing these vessels to intangibles.
We are here concerned with property domiciled in Louisiana, and the issue is which taxing authority in this state can levy a tax against these vessels. The power to legislate is vested in the legislature. Art. 3, § 1(A) La.Const. (1974).
It is clear that the legislature intended that all property be taxed in the parish where situated, as of January 1, except where special provision is made that it be taxed elsewhere. LSA-R.S. 47:1952.[5]
We find no justification for us to disregard the expressed intent of the legislature by accepting the argument that these vessels do not receive the same amount of benefits from the taxing parish as property permanently located therein. We concede that the benefits received may be disproportionate, however, there can be no question that benefits are afforded these vessels by the taxing parish. The rectification of any inequities is properly left to the legislature.
Finally, we find no error in the method used by the Louisiana Tax Commission in determining the tax situs parish. The Tax Commission reviews the activities for the month of December of the preceding year, and January of the tax year, to determine the port of operations. We find this to be a reasonable approach when dealing with movable property, and find the trial judge was in error in substituting his own theory.
Therefore, the proper tax situs is that fixed by the Tax Commission, the base of operations of the vessels as of January 1 of the tax year, and as such the judgment of the trial court is reversed.

DEFENDANTS' ERROR NO. 2
Since we have hereinabove determined the trial judge was in error in establishing the tax situs as the domicile of the owner, *1266 we reverse that portion of the trial court judgment which ordered a refund of the taxes paid under protest.

DEFENDANTS' ERROR NO. 3
In assessing court cost against the defendants, the trial court stated that "the cost of this proceeding are to be borne by the defendants to the extent provided by law". We find this assessment does not violate LSA-R.S. 13:4521, and thus, there is no error on the part of the trial court.

DECREE
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed insofar as it found the vessels in question were not exempt from ad valorem taxation, were taxable in Louisiana, could not be taxed proportionately, and the assessment of costs in the trial court against the defendants to the extent provided by law; is reversed as to fixing of the tax situs at the domicile of the vessel owner and ordering a refund of the taxes paid under protest; and IT IS ORDERED ADJUDGED and DECREED that plaintiffs' suit be and the same is hereby dismissed with prejudice. Plaintiffs-appellants are to pay all costs of this appeal.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] A & P Boat Rentals, Inc., Can Do, Inc. I, C. & G. Marine Service, Inc., C & G International, Inc., C & G Transportation, Inc., M.O.N.T. Boat Rental Service, Inc., E. & G. Chouest Marine Service, Inc., Edison Chouest Boat Rental, Inc., Cherokee Boats, Inc., C. & C. Boat Rental, Inc., Beet Offshore Service, Inc., Can Do, Inc. II, Bollinger & Boyd Barge Service, Inc., 3-C Boat Rentals, Inc., Gilbert Cheramie Boats, Inc., A and A Boats, Inc., 3-C Tug Rentals, Inc., Damon Chouest, Inc. and Martin Offshore Boats, Inc. each have their principal place of business in Lafourche Parish, while Grand Isle Boat Rentals, Inc. has its principal place of business in Jefferson Parish, and Triangle Marine, Inc. has its principal place of business in St. Mary Parish, Louisiana.
[2] Lawrence A. Chehardy-Jefferson Parish, Clyde Gisclair-St. Charles Parish, Lexie J. Belaire-Vermilion Parish and Hubert P. Robichaux-Lafourche Parish.
[3] Alwynn J. Cronvich-Jefferson Parish, Julius B. Sellers, Jr.-St. Charles Parish, Euda Delcambre-Vermilion Parish, Cyrus Bobby Tardo-Lafourche Parish.
[4] This statute has been repealed by Act 703 of the Regular Session of 1976.
[5] § 1952. Place and time of listing and assessment

All property subject to taxation, including merchandise or stock in trade, shall be placed upon the assessment lists in the respective parishes or districts where situated. Assessments shall be made on the basis of the condition of things existing on the 1st day of January of each year.
All crops, whether growing or gathered, shall be considered as being attached to the realty while in first hands, and shall not be separately taxed while in possession of the lessor or his agent.
The notes, judgments, accounts and credits of nonresidents doing business in the state, originating from the business done in this state, are subject to taxation at the business domicile in this state of the nonresident person or his business agent or representative, under the same rules and in the same manner that property of a like nature is assessed and taxed within the state.
Mortgage notes and indebtedness and all evidence of indebtedness, shall be taxable only at the situs and domicile of the holder or owner thereof.
No property shall be taxed twice in the same year.
The tax collectors throughout the state, the parish of Orleans excepted, shall list for taxation for state and parish taxes, all merchandise or stock in trade brought into the several parishes for sale after the assessment rolls for the year are completed, and such officer shall furnish the auditor a duplicate of such assessment; provided nothing in this paragraph shall apply to merchants or other parties who have been regularly assessed.
When a line between two parishes divides a tract of land, or plantation, each portion shall be assessed in the parish in which it lies; all movable property shall be assessed in the parish or district where it is located, except as otherwise provided. When the lines of parishes are in dispute as to their real location, the lines as shown by "Hardee's Map" of 1895, shall be the lines for assessment purposes and the parish or parishes affected thereby shall be governed by such lines unless a court having competent jurisdiction shall decree otherwise.