554 So.2d 1253 (1989)
ZAPATA GULF MARINE OPERATORS, INC. and Gulf Fleet Supply Vessels, Inc.
v.
The LOUISIANA TAX COMMISSION.
No. CA 88 1418.
Court of Appeal of Louisiana, First Circuit.
November 15, 1989.
Rehearing Granted in Part, Denied in Part and Opinion Amended January 2, 1990.
*1254 Christopher J. Dicharry, New Orleans, for plaintiff-appellee Zapata Gulf Marine Operators, Inc., Gulf Fleet Supply Vessels, Inc.
Robert H. Abbott, III, Baton Rouge, for defendant-appellant The Louisiana Tax Com'n.
Robert D. Hoffman, Jr., New Orleans, for Gov't. of Plaquemine Parish, amicus curiae.
Before EDWARDS, LANIER and FOIL, JJ.
LANIER, Judge.
This action is a suit by two taxpayers seeking judicial review of an administrative decision of the Louisiana Tax Commission (Tax Commission) which denied exemptions claimed by the taxpayers. The trial court reversed the holding of the Tax Commission, granted the exemptions and ordered a refund of taxes paid under protest. The Tax Commission took this suspensive appeal.

PROCEDURAL FACTS
In 1987, Zapata Gulf Marine Operators, Inc. (Zapata) owned the motor vessel Barataria Seahorse, and Gulf Fleet Supply Vessels, Inc. (Gulf) owned the motor vessels Gulf Fleet No. 38 and Gulf Fleet No. 70.[1] These vessels[2] were used to commercially service the offshore petroleum industry in the Gulf of Mexico. These vessels were listed on the ad valorem tax rolls of St. Mary Parish for 1987 by the Parish Assessor pursuant to La.R.S. 47:1957.
By letters dated March 31, April 3 and April 16, 1987, Zapata and Gulf notified the Assessor that they were claiming tax exempt status for their vessels pursuant to La. Const. of 1974, art. VII, § 21(C)(16) because the vessels were engaged in foreign commerce. Zapata and Gulf cited Sales Tax District No. 1 of the Parish of Lafourche v. Express Boat Company, Inc., 500 So.2d 364 (La.1987) as authority for their claims. The Assessor denied the exemptions.
Pursuant to La.R.S. 47:1992, by letters dated September 3, 1987, Zapata and Gulf appealed the Assessor's decision to the St. Mary Parish Council (Council), which was acting as the St. Mary Parish Board of Review. After a hearing, the Council sustained the decision of the Assessor.
Pursuant to La.R.S. 47:1989, on October 21, 1987, Zapata and Gulf appealed the Council's decision to the Tax Commission. The Tax Commission had a hearing, and by letter dated December 29, 1987, advised Zapata and Gulf that their vessels were not exempt, citing A & P Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260 (La.App. 1st Cir.), writ denied, 363 So.2d 923 (La.1978) as authority.
Pursuant to La.R.S. 47:2110, on December 28, 1987, Zapata, on behalf of itself and Gulf, paid under protest $13,025.30 to the Sheriff of St. Mary Parish for 1987 ad valorem taxes on the vessels.
Pursuant to La.R.S. 47:1998, on January 28, 1988, Zapata and Gulf filed suit for judicial review of the Tax Commission's decision. After a hearing, the trial court rendered a judgment which vacated the decision of the Tax Commission, recognized that the vessels were exempt from 1987 St. Mary Parish ad valorem taxes and ordered the Sheriff to refund the taxes paid under *1255 protest.[3] The trial court held the Express Boat Company case overruled the A & P Boat Rentals case, the vessels were engaged in international trade, and, thus, the vessels were exempt under the provisions of La. Const. of 1974, art. VII, § 21(C)(16) from ad valorem taxation.

VALIDITY OF A & P BOAT RENTALS AFTER EXPRESS BOAT COMPANY

(Assignments of error numbers 1 and 2)
The Tax Commission contends the trial court erred because it failed to properly interpret the Louisiana Constitution, improperly ruled that the Express Boat Company case overruled the A & P Boat Rentals case and granted exemptions for the vessels.
La. Const. of 1974, art. VII, § 21(C)(16) provides, in pertinent part, as follows:
Section 21. In addition to the homestead exemption provided for in Section 20 of this Article, the following property and no other shall be exempt from ad valorem taxation:
. . . . .
(C) ...
(16) ships and oceangoing tugs, towboats, and barges engaged in international trade and domiciled in Louisiana ports. However, this exemption shall not apply to harbor, wharf, shed, and other port dues or to any vessel operated in the coastal trade of the states of the United States.
(Emphasis added)
This provision was preceded by La. Const. of 1921, art. 10, § 4(3) which provided:
Section 4. The following property, and no other, shall be exempt from taxation:
. . . . .
3. ... ships and ocean-going tugs, towboats and barges engaged in overseas trade and commerce and domiciled in Louisiana ports, but this exemption shall not apply to harbor, wharf, shed, and other port dues, and no ship, tugboat or barge operated in the coastal trade of the continental United States shall be within the exemption herein granted; ...
(Emphasis added)
Minor changes in the wording of this exemption were made by the redactors of the 1974 Constitution, but they were not intended to change the substance of this exemption. See Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Volume 8, pp. 1905, 1949, 1950; Volume 9, pp. 3317, 3318. Under the provisions of the 1921 and 1974 Constitutions, vessels engaged in servicing the offshore oil industry in the Gulf of Mexico have been assessed with ad valorem taxes.
The significance of the change in the wording of the exemption in the 1974 Constitution was addressed in the A & P Boat Rentals case. In A & P Boat Rentals, the plaintiffs argued that vessels engaged in servicing the offshore oil industry in the Gulf of Mexico were exempt from all ad valorem taxation under the 1974 Louisiana Constitution because they were involved in the transportation of passengers and goods beyond the seaward boundaries of Louisiana. It was argued that a significant change was made from the terminology "overseas trade and commerce" used in La. Const. of 1921, art. 10, § 4(3) to "international trade" used in La. Const. of 1974, art. VII, § 21(C)(16). It was asserted that overseas trade was that between different nations, whereas, international trade was that beyond the seaward boundaries of the state. In finding that the plaintiffs' vessels were not engaged in international trade and not exempt from ad valorem taxation, this court observed as follows:
We do not agree that the delegates to the Constitutional Convention by the changing of the terminology "overseas trade and commerce" to "international trade" intended any change in the meaning of these terms. Appellants have not cited to this Court any debate from the *1256 Constitutional Convention in support of this argument, nor have we been able to find any. We are convinced that the delegates intended no distinction, and thus the terminology is synonymous.
"International commerce" or "commerce with foreign nations" has been described at 15 C.J.S. Commerce, § 3 as follows:
"While commerce with foreign nations, sometimes referred to as `international commerce', has been described as commerce of the United States with foreign nations, it has been said to mean commerce between citizens of the United States and citizens or subjects of foreign government, as individuals. It means trade and intercourse in all its branches, and embraces every species of commercial intercourse between the United States and foreign nations, including transportation, and it comprehends transportation from a foreign country into the United States, but is limited to commerce and transactions which, either immediately or at some stage of their progress, are extraterritorial. [Footnotes omitted]"
Since appellants' vessels do not participate in commercial intercourse with foreign countries, they cannot be found to be "engaged in international trade".
361 So.2d at 1263.
The Louisiana Supreme Court decision in Express Boat Company has caused vessel owners to raise again the issues decided in A & P Boat Rentals. This suit is one of many filed as a result of the Express Boat Company decision.
In Express Boat Company, the issue was whether the exemptions found in the Louisiana Sales and Use Tax statute, La. R.S. 47:302, et seq., applied to the purchase by, and vessel repair services performed for, the owner of a fleet of offshore supply vessels which operated between Louisiana ports and points on the Outer Continental Shelf. La.R.S. 47:305.1(B) exempts from sales tax materials and supplies purchased by the owner or operator of vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the vessel for use or consumption in the maintenance and operation thereof, repair services performed upon vessels operating exclusively in foreign or interstate coastwise commerce, and materials and supplies used in such repairs where such material and supplies become a component part of such vessel. In finding the sales tax exemption applicable, the Court stated the following:
Activities similar to those carried out by the Cheramie vessels have consistently been characterized by the courts as "foreign commerce." The cases have held that navigation of the high seas is "foreign commerce." Lord v. Goodall, Nelson & Perkins Steamship Company, 102 U.S. (12 Otto) 541, 26 L.Ed. 224 (1881) and The Vessel Abby Dodge v. U.S., 223 U.S. 166, 32 S.Ct. 310, 55 L.Ed. 390 (1912).
As correctly pointed out by the court of appeal, the facts in this case are quite similar to the facts presented in Lord. The issue before the United States Supreme Court in Lord was whether Congress had the exclusive power to regulate the liability of owners of vessels which navigate the high seas while simply transporting goods and passengers between ports in a single state, the state of California. In deciding that only Congress had the power to regulate the liability of owners of such vessels, the United States Supreme Court held that a vessel whose voyage began and ended in the same state using routes on the high seas and not crossing the territorial borders of another state or nation was engaged in foreign commerce. In so holding, the Supreme Court emphasized that while the contracts sued on in that case were contracts to carry goods between ports in the same state (San Diego, California, and San Francisco, California) the contracts could not be performed except by venturing out upon the high seas. 102 U.S. (12 Otto) at 543-44.
In characterizing the vessel's navigation on the high seas as foreign commerce, the Court in Lord stated:
Commerce includes intercourse, navigation, and not traffic alone. This also *1257 was settled in Gibbons v. Ogden, supra [9 Wheat. 1], 189, [6 L.Ed. 23]. "Commerce with foreign Nations," says Mr. Justice Daniel for the court in Veazie v. Moor, 14 How., 568, 573 [14 L.Ed. 545 (1852) ], "must signify commerce which, in some sense, is necessarily connected with these Nations, transactions which either immediately or at some stage of their progress must be extraterritorial."
The Pacific Ocean belongs to no one Nation, but is the common property of all. When, therefore, The Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other Nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial Nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other Nations and was treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If, in her navigation, she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign Nations, and as such she and the business in which she was engaged were subject to the regulating power of Congress. (Emphasis added.)
102 U.S. (12 Otto) at 543.
Thirty-two years later the United States Supreme Court in The Vessel Abby Dodge reaffirmed the principle that mere navigation of the high seas was foreign commerce. In that case, the "Abby Dodge" voyaged out of Tarpon Springs, Florida into the Gulf of Mexico beyond the territorial waters of the United States onto the high seas to gather sponges. Because the vessel was navigating on the high seas, she was classified as being "engaged in foreign commerce."
. . . . .
The courts below were correct in concluding that the Legislature intended, when using the words, "foreign ... commerce" in the statutory exemption, that a vessel's venturing into the Gulf of Mexico beyond the territorial boundaries of the State of Louisiana and the United States would constitute engaging in foreign commerce. (Footnotes omitted)
500 So.2d at 369-370.
Gulf and Zapata contend that Express Boat Company impliedly overruled A & P Boat Rentals. They argue that foreign commerce and international trade are synonymous and, since vessels servicing the oil industry on the Outer Continental Shelf are engaged in foreign commerce under Express Boat Company, they are also engaged in international trade and exempt from ad valorem taxation under La. Const. of 1974, art. VII, § 21(C)(16). The Tax Commission argues that A & P Boat Rentals is still the law today and that Express Boat Company did not overrule this case.
The Louisiana Supreme Court in Express Boat Company did not expressly overrule the A & P Boat Rentals case. Thus, we must decide whether the court in Express Boat Company overruled A & P Boat Rentals by implication.
Exemptions from taxation are to be strictly construed against the person claiming the exemption and they must be clearly and affirmatively established. Bill Roberts, Inc. v. McNamara, 539 So.2d 1226 (La.1989). Exemptions are an exceptional privilege which must be expressly and clearly conferred in plain terms. McNamara v. Central Marine Service, Inc., 507 So.2d 207 (La.1987). When interpreting a law (constitution, statute or ordinance), a court should give it the meaning the lawmaker intended. Meloy v. Conoco, Inc., 504 So.2d 833 (La.1987); Achee v. Louisiana State Employees' Retirement Board, 527 So.2d 1116 (La.App. 1st Cir.1988). This *1258 last rule of interpretation is applicable to tax exemptions. Express Boat Company, 500 So.2d at 368.
A review of Express Boat Company shows that for purposes of the Louisiana Sales and Use Tax exemptions, La.R.S. 47:302, et seq., the phrase "foreign commerce" was intended by the legislature to mean not domestic. Thus, when the vessels in Express Boat Company traveled outside the territorial jurisdiction of the State of Louisiana, they were engaged in "foreign commerce".
In the instant case, we must determine the intent of the redactors of the 1921 and 1974 Louisiana Constitutions when they used the phrases "overseas trade" and "international trade". International means relating to, or affecting, two or more nations. Webster's Ninth New Collegiate Dictionary 632 (1984). The word international is made or formed by joining the word inter, which means among or between, with the word national, which means pertaining or relating to a nation as a whole. Black's Law Dictionary 728, 923 (5th ed. 1979). Thus, in A & P Boat Rentals, we held that vessels which are domiciled in Louisiana and service oil and gas operations in the Gulf of Mexico outside Louisiana's territorial limits are not engaging in international trade with foreign countries (other nations) and thus, are not "engaged in international trade" for purposes of the questioned tax exemption. A & P Boat Rentals, 361 So.2d at 1262-1263. This interpretation was, and is, correct.
The meaning intended for this tax exemption by the redactors of the 1974 Louisiana Constitution can best be gleaned from the following discussion between Delegates Dennery and Winchester[4] found at 8 Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, at 1949-1950:
Amendment

Mr. Poynter Amendment No. 1. On page 4, line 12this is the Dennery amendment we had passed outpage 4, line 12, after the words and punctuation "owners;" delete the remainder of the line and insert in lieu thereof the following: "ships and oceangoing tugs, towboats, and barges"
Explanation

Mr. Dennery The purpose of this amendment, Mr. Chairman, ladies and gentlemen of the convention, is to put into the present draft the same language that presently exists in the current constitution. The reason for requesting that the constitution adopt this amendment which I firmly and sincerely believe to be technicalis that under the new system of last vessels, lighter aboard ship vessels, there is some possibility that such a barge or a lash would not be considered to be an oceangoing vessel. In order to avoid any questions about it, the committee chairman and Mr. Planchard agreed that they would have no objection to going back to the language that is currently contained in the constitution, which exempts ships and oceangoing tugs, towboats and barges.
I'll be pleased to answer any questions, Mr. Chairman.
Questions
Mr. Winchester Mr. Dennery, St. Mary Parish services a lot of offshore installations. They have oceangoing tugs; they have oceangoing barges. What would this do to the assessment of those oceangoing tugs and oceangoing barges that are now on the tax rolls?
Mr. Dennery Mr. Winchester, I don't think it would do a thing because these four words, or these four classes, are followed in the present draft on line 13 with engaged...

Mr. Winchester But not in the same order.

Mr. Dennery Yes, sir. In the same order. It will now read "ships and oceangoing tugs, towboats and barges engaged in international trade and domiciled in Louisiana ports," etc.

*1259 Mr. Winchester Well, ... all right we have tugs that work in Morgan City work in the coastal waters. Sometimes they go to Iran; sometimes they go to the North Sea; these barges the same way, what would happen to those assessments?

Mr. Dennery As I understand it, Mr. Winchester, the same thing that would happen now, while they are engaged in international trade, they would not be taxable; while they were not so engaged, they would be.

Mr. Winchester Well, when do you decide that they are in international trade, and how do you decide it ordinarily? They're here today, and they haven't assessed ...

Mr. Dennery Mr. Winchester, to answer your question, I can only say to you, sir, as you told us, the assessors know their own business. Now, if the assessors can't tell that, I can't give you any real basic reason for it.

Mr. Winchester No, but you've changed a little ... would you please read to me exactly how the old constitution reads, sir?

Mr. Dennery Yes, sir. It says "ships and oceangoing tugs, towboats and barges engaged in overseas trade and commerce and domiciled in Louisiana ports. But this exemption shall not apply to harbor, wharf, shed, and other port dues ... and no ship, tugboat or barge operated in the coastal trade of the continental United States shall be within the exemptions herein granted." And that's exactly the way it reads.

Mr. Winchester All right. Now wait a minute. Let me ask you this: your amendment would ... after the word "owners" on page 12 ...
Mr. Dennery No, on line 12.

Mr. Winchester On line 12 would say "ships and oceangoing tugs, towboats and barges ... all oceangoing vessels engaged in international trade." Now, what is ...that is certainly different, isn't it?
Mr. Dennery No, sir. I beg your pardon, sir. If you will read the amendment, we deleted the language at the end of that line, "all oceangoing vessels." That has now been deleted. So, in lieu of ... in place of "all oceangoing vessels" we're putting back the language that presently is in the constitution, which reads "ships and oceangoing tugs, towboats and barges." Otherwise it's the same.

Mr. Rayburn Mr. Dennery, is it not so that the committee merely, when they reduced the language that is in the present proposal, that they were just trying to eliminate a few words, and there has been some question? The present language says "all oceangoing vessels," and the committee members felt that that took care of it. But there has been some discussions; so all this amendment does is place back the exact language that's now in the present constitution, word for word, comma for comma, and period for period.

Mr. Dennery That's exactly my understanding of it, Senator.
Mr. Nunez Mr. Dennery, along the same lines, doesn't this leave exactly the same way ... if an assessor in coastal Louisiana was taxing, or had tugboats on the rolls, and they were paying an ad valorem taxation on those tugboats, that it will remain the same? You're not exempting them under your amendment. But, if they were in international trade, such as lash or some of these oceangoing tugs, and they were exempt, they would now still be exempt? That's essentially what you're doing ... an error created by the committee in not putting it back the way it was.
Mr. Dennery Exactly. That's exactly right, Senator.

Mr. Flory Mr. Dennery, doesn't this guarantee that those people working on the docks in New Orleans ... will now be able to continue working, because if they don't put this in there, these types of ships could move to Houston, Mobile, as their home port?

Mr. Dennery Very possible, very possible. That's one of the reasons that I ...
*1260 [Amendment adopted without objection]
(Emphasis added)
These assignments of error have merit.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of the Tax Commission and against Zapata and Gulf reinstating the ruling of the Tax Commission which denied the exemption claims.[5] Zapata and Gulf are taxed with all costs of these proceedings.
REVERSED AND RENDERED.

ON APPLICATION FOR REHEARING
PER CURIAM:
In this application for rehearing, Zapata Gulf Marine Operators, Inc. (Zapata) and Gulf Fleet Supply Vessels, Inc. (Gulf) contend that this court erred in not addressing their due process, equal protection, commerce clause, and Outer Continental Shelf Lands Act (OCSLA) arguments.
In their trial court petition, Zapata and Gulf cumulated two causes of action: (1) an appeal from the Louisiana Tax Commission (Tax Commission) which contested the Tax Commission ruling that Gulf and Zapata vessels were not exempt from ad valorem taxes under La. Const. of 1974, art. VII, § 21(C)(16), and, in the alternative, (2) an action asserting the unconstitutionality of the ad valorem tax on due process, equal protection and commerce clause grounds. In their petition, Zapata and Gulf did not assert that the ad valorem tax violated OCSLA.
The trial court found that the Zapata and Gulf vessels were engaged in international trade and exempt from ad valorem property taxes. The trial court did not address the constitutional issues raised in the alternative because it was unnecessary to do so.
The Tax Commission appealed the trial court's ruling on the exemption Issue. Zapata and Gulf did not appeal or answer this appeal. Only the trial court's ruling on the exemption issue is before us; the issues of the constitutionality of the ad valorem tax and violation of OCSLA are not part of this appeal. Further, the record before us does not contain any evidence upon which we could decide these issues.
In our original opinion, we reversed the trial court's finding on the exemption issue and did not address the constitutional and OCSLA arguments raised by Zapata and Gulf in brief. In our decree we reversed and rendered; we did not remand. On reconsideration we believe it would be appropriate to grant this rehearing for the limited purpose of ordering this case remanded to the trial court for a trial and decision on the issues presented to it on the validity of the ad valorem tax. La.C.C.P. art. 2164; Hall v. Louisiana State Racing Commission, 505 So.2d 744 (La.App. 4th Cir.1987); Accountants' Association of Louisiana v. State, 487 So.2d 155 (La.App. 4th Cir.), writ denied, 492 So.2d 1219 (La. 1986). In all other respects the rehearing is denied.
Therefore, we amend our original decree to provide as follows:
"For the foregoing reasons, the judgment of the trial court is reversed, and judgment is rendered in favor of the Tax Commission and against Zapata and Gulf reinstating the ruling of the Tax Commission which denied the exemption claims. This case is remanded to the trial court for a trial and decision on the issues pertaining to the validity of the ad valorem tax that are raised by Zapata and Gulf. Zapata and Gulf are taxed with the cost of this appeal.
*1261 REVERSED AND RENDERED AND REMANDED."
NOTES
[1] The Gulf Fleet No. 38 and Gulf Fleet No. 70 were owned by Gulf Fleet Equipment Co. on January 1, 1987, and, accordingly, were originally assessed for 1987 property tax purposes by St. Mary Parish to Gulf Fleet Equipment Co. However, on September 18, 1987, Gulf Fleet Equipment Co. was merged into Gulf Fleet Supply Vessels, Inc., the present owner of the vessels.
[2] The Barataria Seahorse, Gulf Fleet No. 38 and Gulf Fleet No. 70 shall hereinafter be collectively referred to as the vessels.
[3] The trial court judgment only grants a refund in favor of Zapata because Zapata paid $13,025.30 on behalf of itself and Gulf.
[4] We take judicial notice that F.D. "Dan" Winchester was the elected delegate from District 50 to the 1973 Constitutional Convention and was serving as the assessor of St. Mary Parish.
[5] Gulf and Zapata dedicate a substantial portion of their briefs asserting that the failure to apportion the ad valorem tax is a violation of the Due Process and Commerce clauses of the United States Constitution and the Outer Continental Shelf Lands Act. These issues were not raised before the Assessor, the St. Mary Parish Board of Review or the Tax Commission. The Due Process and Commerce clause issues were raised in the trial court; the Outer Continental Shelf Lands Act issue was not. There is no evidence in the record before us upon which we can adjudicate these issues.