563 So.2d 951 (1990)
ROWAN COMPANIES, INC.
v.
LOUISIANA STATE TAX COMMISSION, et al.
No. CA 890620.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
Limited Rehearing Granted July 18, 1990.[*]
William H. Cook, Jr., New Orleans, for plaintiff-appellee, Rowan Companies, et al.
Robert D. Hoffman, Jr., New Orleans, and Jamar W. Adcock, Baton Rouge, for defendants-appellants, Ernest D. Wooton, Sheriff and Tax Collector, Parish of Plaquemine, and Louisiana Tax Com'n.
Before COVINGTON, C.J., and WATKINS, J., and DOHERTY, J. Pro Tem.[**]
COVINGTON, Chief Judge.
Defendants Ernest D. Wooton, the Sheriff and Tax Collector of the Parish of Plaquemine, and Robert D. Gravolet, the Assessor of the Parish of Plaquemine, appeal the district court judgment which vacated the decision of the Louisiana Tax Commission and ordered a refund of $171,228.75 plus interest to plaintiff, Rowan Companies, Inc. The Commission had upheld an assessment for ad valorem taxes by the Assessor on plaintiff's jack-up drilling rig, the Rowan Gorilla IV, for the tax year 1987, since the rig was present in the Port of Plaquemine on January 1, 1987, the tax assessment date.
*952 After a thorough consideration of the record and the legal principles involved, we find the decision of the district judge correct. With one deletion, we adopt the written reasons of the district court as our own, and attach as Appendix A.
In his written reasons assigned on January 31, 1989, the district court judge found that Sales Tax District No. 1 of the Parish of Lafourche v. Express Boat Company, Inc., 500 So.2d 364 (La.1987) had overruled A & P Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260 (La.App. 1 Cir.) writ denied, 363 So.2d 923 (La.1978). However, on November 15, 1989, this court ruled in Zapata Gulf Marine Operators, Inc. v. Louisiana Tax Commission, 554 So.2d 1253 (La.App. 1 Cir.1989), writs denied, 559 So.2d 1357 (La.1990), that A & P Boat Rentals was not overruled by Express Boat Company. For this reason we have deleted that portion of the reasons for judgment to the contrary. However, this deletion does not affect the validity of the judgment nor the remainder of the written reasons.
Because of the unique nature of the Gorilla IV, which was constructed for use outside of the Gulf of Mexico, Zapata, A & P Boat Rentals, and many of the other cases cited by defendants are inapposite. The Gorilla IV was built for use as an instrument of international trade, unlike the vessels used in the offshore oil industry in the Gulf of Mexico, which could also be used domestically with no loss in revenues. Even the Tax Commission acknowledged the unique nature of this rig in its decision:
The very nature of the Gorilla IV's design makes it unique, if not to the world, then to Louisiana. This is the fourth rig of this design built and none of the others operate in the Louisiana territorial sphere. In developing the guidelines on drilling rigs and barges, no information regarding a rig of this size was considered as none were anticipated to be assessable.

[Emphasis added.]
Thus, even after the Zapata decision, we find the Rowan Gorilla IV to be exempt from ad valorem taxation as a vessel engaged in international trade.
Costs of this appeal in the amount of $950.93 are assessed to defendants-appellants.
AFFIRMED.

APPENDIX A

Rowan Companies, Inc.

Versus

Louisiana State Tax Commission, et al

Number 326,115, Division "G"

19th Judicial District Court

Parish of East Baton Rouge

State of Louisiana

WRITTEN REASONS FOR JUDGMENT
This case began when plaintiff, Rowan Companies, contracted with Marathon-LeTorneau [sic] Company to build the Rowan Gorilla IV, a large offshore drilling rig. The contract provided that the rig meet the specifications of the American Bureau of Shipping (ABS) and the U.S. Coast Guard. The rig was to be constructed in Vicksburg, Mississippi. The contract also provided that Rowan would make arrangements for the platform to be towed to a site below New Orleans where the final leg sections would be installed since on-site installation would render the rig unable to pass under the Mississippi River bridges.
The Rowan Gorilla IV arrived in Belle Chase, Louisiana on November 9, 1986. The leg addition was completed by December 23, 1986. At this time, ABS and Coast Guard certifications were given. The installation of the legs was a self contained shipboard procedure that involved no Plaquemine Parish businesses. The welders lived on board and were provided on location by the Vicksburg shipyard.
Rowan Companies planned to move the rig on December 23, 1986, but a safety question arose involving the structural integrity of the rig and the strength of the rig's legs where they entered the hull. Attempts to find a solution were made and the same resulted in modifications which were completed on March 19, 1987.
*953 In addition, it was discovered that the rig's starboard leg had been bent by the river current. This also required repairs which were completed on March 29, 1987. The final ABS hull certification was not issued until May 5, 1987, however, the rig was removed from the Belle Chase location on May 1, 1987. At this time, Rowan Co. had no customer for the rig and it was moved into the Gulf near Parcagoula [sic], Mississippi. It was later moved to its first job location on the Outer Continental Shelf.
The rig was taxed for ad valorem personal property taxes for the year 1987 by the Parish of Plaquemines. An appeal of the Assessment was taken to the Plaquemines Parish Board of Review which sustained the Assessment on October 22, 1987. An appeal was then taken to the Louisiana Tax Commission which, after an evidentiary hearing, sustained the Assessment on January 14, 1988, whereupon Rowan Co. paid the tax under protest.
The issues to be decided herein include whether the delay constitutes a break in the "continuity of transit" which would enable Plaquemines Parish to tax the property and whether or not the Rowan Gorilla IV was engaged in foreign commerce at the time of the assessment.
Article 7, Section 21 of the 1971 [sic] Louisiana Constitution is entitled "Other Property Exemptions." It lists property which is exempt from ad valorem taxation. Section 3 provides an exemption from ad valorem taxes for "[g]oods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce through or over the territory of the state or which are in public or private storage within Louisiana, having been shipped from outside Louisiana for storage in transit to a final destination outside Louisiana, whether such destination was specified when transportation began or afterward."
The Commission states that plaintiff must "clearly, unequivocally and affirmatively establish that the rig is exempt," but the U.S. Supreme Court has applied a "liberal construction" of continuity of the journey and gives "broad latitude" in determining whether the interruption is due to the necessities of the journey.
In Coe v. Town of Errol, 117[*] U.S. 517 (1886), the Supreme Court held that logs which were detained during their interstate journey due to low water were not subject to taxation. The delay was determined to be due entriely [sic] to the means of transportation.
In Kelly [sic] v. Rhoads, 188 U.S. 1 [23 S.Ct. 259, 47 L.Ed. 359] (1903) sheep which were herded from Utah to Nebraska and that grazed along the way were held to be moving in interstate commerce and immune from local taxation. The Court held that the sheep were not brought into Wyoming for grazing, but that the grazing was incidental to their continuous interstate journey.
In Carson Petroleum v. Vial, 279 U.S. 95 [49 S.Ct. 292, 73 L.Ed. 626] (1929), the U.S. Supreme Court reversed the Louisiana Supreme Court and held that oil purchased at interior points for export did not lose its character as foreign commerce when it was temporarily stored in tanks before being loaded onto foreign vessels.
Under the facts in the case at hand, the Court has determined that the Rowan Gorilla IV was not delayed for reasons which would constitute a break in the "continuity of transit," but instead was stopped in Belle Chase for reasons beyond the control of Rowan Co. In addition, the rig paid a lay up fee established by the Port of Plaquemines for this type of situation. The Rowan Gorilla IV was charged $150 per day, at a total cost of approximately $28,000.
The assessment has also been determined to be void because the rig is found to be engaged in foreign commerce....
In the case at hand, though, there is even a stronger argument than there was in Express Boat, that the Rowan Gorilla IV was engaged in foreign commerce. This was not an ordinary rig designed to be *954 used only in the Gulf of Mexico. The Rowan Gorilla IV was designed to work in harsh conditions that exist primarily in the North Sea and the Sable Island area in Eastern Canada. The rig was certified and approved as meeting the regulatory criteria of the agencies located in the North Sea and Canada. It was built according to Mobile Offshore Drilling Unit Regulations established by the United States, Great Britain and the Netherlands.
Rowan Co. actively pursued foreign markets for the Rowan Gorilla from its beginning. It was bid for jobs in the North Sea while under construction. After its completion, it was bid to a Paris company for a job in Argentina, a Canadian company for a North Sea job and also for a job in Australia. The Rowan Gorilla's first job was for Amoco on the Outer Continental Shelf in the Gulf of Mexico. This was a form of working storage, due to a severe market downturn that limited foreign job availability.
The Tax Commission's holding that the Rowan Gorilla IV was not engaged in international trade is simply in error. Likewise, the contention of Plaquemines Parish that the design and intended use of the Rowan Gorilla IV were not sufficient to establish that the rig was in international commerce is not well-founded in light of the decision in Shatel Corp. v. MAO TA Lumber and Yact [sic] Corp., 697 F.2d 1352 (11 Cir. 1983) wherein the Court held that advertising and solicitation of sales between citizens of the U.S. and citizens of foreign nations places a ship in foreign commerce.
Accordingly, the Tax Commission's decision sustaining the tax is overruled and judgment is granted in favor of the plaintiff, Rowan Companies.
Baton Rouge, Louisiana, this 31st day of January, 1989.
/s/ Leo P. Higginbotham, Jr.
Leo P. Higginbotham, Jr.
Judge, Division "G"
19th Judicial District Court
State of Louisiana
NOTES
[*] Rowan Companies, et al vs La. State Tax Commission Granted for the limited purpose of correcting the interest assessed in the judgment of the trial court pursuant to LSA-R.S. 47:2110A, so that the rate of interest shall be two (2) percent per annum from the date of payment under protest until refunded.
[**] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[*] The correct cite for Coe v. Town of Errol is 116 U.S. 517 [6 S.Ct. 475, 29 L.Ed. 715] (1886).