500 So.2d 364 (1987)
SALES TAX DISTRICT NO. 1 OF the PARISH OF LAFOURCHE, et al.
v.
EXPRESS BOAT COMPANY, INC.
No. 86-C-0790.
Supreme Court of Louisiana.
January 12, 1987.
*365 Robert L. Roland, Watson, Blanche, Wilson & Posner, Baton Rouge, for applicant.
William Porteous, III, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for respondent.
CALOGERO, Justice.[*]
The Louisiana Sales and Use Tax statute[1] exempts, pertinent to this case, "materials and supplies purchased by the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof," "repair services performed upon ships or vessels operating exclusively in foreign or interstate coastwise commerce," and "the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels."[2]
*366 The principal issue in this case is whether these exemptions apply to the purchase by and vessel repair services performed for respondent, Express Boats, a corporation which operates a fleet of offshore supply vessels between Louisiana ports and points on the Outer Continental Shelf.[3]
The relators, Sales Tax District No. 1 of the Parish of Lafourche and the Lafourche Parish School Board (hereinafter referred to as the local taxing authorities), filed a rule for sales and use taxes against the respondent, Express Boat Co., Inc. The trial court ruled that Express Boat was entitled to an exemption from the sales taxes which the local taxing authorities sought to impose. The First Circuit Court of Appeal, adopting much of the trial court's language and reasoning, affirmed.
Under the authority granted by La. Const. art. 6, § 29 and La.R.S. 33:2737, the local taxing authorities each enacted sales and use tax ordinances "upon the sale at retail, the use, the lease or rental, the consumption, and the storage for use or consumption of tangible personal property and upon the sale of services." The two ordinances are identically numbered and each closely tracks the language found in the Louisiana Sales & Use Tax statute.
Each of the local sales ordinances contain a Section 3.01(6) relative to exemptions,[4] the language of which is nearly identical to the language of their counterpart, La.R.S. 47:305.1(B). Express Boat contends that the transactions which the local taxing authorities are attempting to tax come within the exemption provided by Section 3.01(6) of the local tax ordinances. The local taxing authorities on the other hand contend that, based on the regulations adopted by the Louisiana Department of Revenue and Taxation interpreting La.R.S. 47:305.1(B), the transactions are not exempt, but rather taxable.
La.R.S. 47:305.1(B) was added to the state sales tax law by 1959 La.Acts No. 51. Pursuant to the authority contained in that act, the Department of Revenue and Taxation promulgated certain regulations in connection with the statute,[5] the pertinent regulation in this case being Article 47:305.1. That article, interpreting La.R.S. 47:305.1 defines "commerce," "interstate coastwise commerce," and "foreign commerce" as follows:
Commerce means the transporting of goods or persons by ship or vessel.
Interstate coastwise commerce means commerce as defined herein from a point in one state to a point in another state. Commerce from a point in the State of Louisiana to an offshore area is not considered to be interstate commerce within the meaning of these regulations. (Emphasis added.)

Foreign commerce means commerce as defined herein from a point in a state *367 to a point in a foreign state. (Emphasis added.)
The trial judge described the activities of the respondent, Express Boat Company, as follows:
Express Boat Company operates a fleet of offshore supply vessels collectively known as The Cheramie Vessels. There are twenty-eight (28) or twenty-nine (29) vessels in the fleet and they range in length from eighty (80) feet to one hundred sixty (160') feet. The Cheramie Vessels sail from points in Louisiana and Texas to points on the outer continental shelf. They proceed from Venice, Grand Isle, Leeville, Dulac, Morgan City, Intracoastal City, Cameron, Galveston and Free Port to points on the outer continental shelf which are beyond three (3) miles off the coast of Louisiana. The voyages that the vessels go upon subject them to the inland rules of the road and to international rules of the road. The voyages which these vessels make into international waters have a duration of several days. Eventually the vessels return from points on the outer continental shelf to points in Louisiana and Texas. While sailing the high seas over the outer continental shelf the vessels support productions [sic] and drilling activity through the delivery and transfer of personnel and supplies to offshore drilling vessels and to platforms concerned with drilling and production of natural gas and oil from the federal domain located three (3) miles seaward of the coast line.
The vessels go eighty (80), ninety (90) or a hundred (100) miles into the sea on the outer continental shelf. On a typical voyage a Cheramie Vessel based at Leeville would transit Lafourche Parish waters on only five (5%) percent of its voyage.
The Cheramie Vessels navigate international waters adjacent to Louisiana and Texas. They encounter ships of foreign nations since their courses must take them through the international trade routes having their terminal at the mouth of the Mississippi River, the buoys at L.O.O.P., and Galveston and Houston, Texas. They carry the American flag and are vessels of the United States.
As stated earlier the local sales and use tax ordinances, tracking Louisiana Sales and Use tax statute, establish the exemption described hereinabove relative to vessels engaged "exclusively in foreign or interstate coastwise commerce." The meaning of the term foreign or interstate coastwise commerce governs disposition of this case. Express Boat asserts that its vessels are engaged in "foreign and interstate coastwise commerce" when they voyage out of Louisiana ports to points on the Outer Continental Shelf greater than three miles off the Louisiana coast.
Relying on the Department of Revenue and Taxation regulation (Article 47:305.1), which specifically defines foreign commerce as being merely from a point in a state to a point in a foreign state and defines interstate coastwise commerce as not being "commerce from a point in the State of Louisiana to an offshore area," the local taxing authorities argue that the exemptions created by La.R.S. 47:305.1(B) do not apply to the operations of the Express Boat Company and that accordingly sales and use taxes are due.
As pointed out by the lower courts, the Department of Revenue and Taxation regulation interpreting La.R.S. 47:305.1(B) was first promulgated following the enactment of that statute in 1959 (1959 La.Acts No. 51). The local sales tax ordinances were adopted in 1965 and 1980, some six and twenty-one years, respectively, after La.R.S. 47:305.1(B) was enacted. Because these ordinances were copied from the Louisiana State Sales & Use Tax statute, those ordinances are deemed to have incorporated the interpretations of the state statutes on which they were based. See, for example, Standard Oil Co. v. Collector of Revenue, 210 La. 428, 27 So.2d 268 (1946).
So, the central factor in determining whether Express Boat Company is afforded the exemptions under the local tax ordinances is whether Article 305.1, the Department of Revenue Regulation defining *368 interstate or foreign commerce, correctly interprets and applies the Legislature's exemption. This Court is of the opinion, for reasons to be discussed hereinafter, that Article 305.1 does not express the Legislature's intention concerning the exemptions and is thus not dispositive here. The correct interpretation of the term "foreign or interstate coastwise commerce" is that advanced by Express Boat Co. They urge that crossing the territorial boundaries of the State of Louisiana and the United States and venturing onto the Outer Continental Shelf is foreign commerce and that, despite the assertion by the taxing authorities, La.R.S. 47:305.1(B) does not require that the terminus of a vessel's voyage be in another foreign state or country.
Neither La.R.S. 47:305.1(B) nor the local sales tax ordinances define interstate or foreign commerce. The local taxing authorities argue that the statute is ambiguous and that Article 305.1 defining "foreign and interstate coastwise commerce" should thus be entitled to great weight. Indeed, as pointed out by this Court in 1976, "a long settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation." Traigle v. P.P.G. Industries, Inc., 332 So.2d 777, 782 (La.1976).
The taxing authorities also urge that the words "interstate commerce" and "foreign commerce" should be given, as required by La.Civ.Code Ann. art. 14 (West 1986), their most usual signification, their ordinary meaning. According to the taxing authorities, the ordinary meaning of "interstate commerce" is commerce between two states and the ordinary meaning of "foreign commerce" is commerce between two foreign countries. Furthermore, argue the taxing authorities, if the term "foreign and interstate coastwise commerce" is susceptible to another interpretation, because the term is used in an exemption, the term should be construed in favor of taxation and against the exemption. Vulcan Foundry, Inc. v. McNamara, 414 So.2d 1193 (La.1981).
Of course, the aim of these principles of statutory interpretation is simply to ascertain the meaning of a statute with due regard to legislative intent. The Legislature in creating exemptions to state sales tax used only the words "interstate and foreign coastwise commerce." Notably, the Legislature did not define these terms. But, as stated by the trial court,
The concepts of interstate and foreign commerce are terms well known in law and it can only be presumed that the legislature intended that those words be used in their normal and accepted context without some requirement that vessels operating to the offshore area be included [sic; the trial judge obviously meant excluded] or that a vessel be on a voyage of thirty (30) consecutive days in order to qualify. The effect of the regulations is to emasculate the clear and obvious meaning of the term interstate and foreign commerce. The Courts are not bound by such restriction and confining administrative definitions but must interpret the statute in the clear and unambiguous way intended by the legislature.
Indeed, words in a statute are to be construed according to their popular and commonly accepted meaning, absent strong reasons to do otherwise. Perrin v. United States, 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979); Robinson v. Blackburn, 367 So.2d 360 (La.1979). It is presumed that the Legislature when enacting a statute intends the words of that statute to be construed in accordance with any well-known meanings that have become inextricably intertwined with the term itself. La.R.S. 3:1 states in pertinent part:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.... (Emphasis added.) *369 The terms "foreign commerce" and "interstate coastwise commerce" do have a well established legal meaning, a meaning which is broader than the limited definition which the Department of Revenue and Taxation attempts to give in Article 47:305.1.
Activities similar to those carried out by the Cheramie vessels have consistently been characterized by the courts as "foreign commerce." The cases have held that navigation of the high seas[6] is "foreign commerce." Lord v. Goodall, Nelson & Perkins Steamship Company, 102 U.S. (12 Otto) 541, 26 L.Ed. 224 (1881) and The Vessel Abby Dodge v. U.S., 223 U.S. 166, 32 S.Ct. 310, 55 L.Ed. 390 (1912).
As correctly pointed out by the court of appeal, the facts in this case are quite similar to the facts presented in Lord. The issue before the United States Supreme Court in Lord was whether Congress had the exclusive power to regulate the liability of owners of vessels which navigate the high seas while simply transporting goods and passengers between ports in a single state, the state of California. In deciding that only Congress had the power to regulate the liability of owners of such vessels, the United States Supreme Court held that a vessel whose voyage began and ended in the same state using routes on the high seas and not crossing the territorial borders of another state or nation was engaged in foreign commerce. In so holding, the Supreme Court emphasized that while the contracts sued on in that case were contracts to carry goods between ports in the same state (San Diego, California, and San Francisco, California) the contracts could not be performed except by venturing out upon the high seas. 102 U.S. (12 Otto) at 543-44.
In characterizing the vessel's navigation on the high seas as foreign commerce, the Court in Lord stated:
Commerce includes intercourse, navigation, and not traffic alone. This also was settled in Gibbons v. Ogden, supra [9 Wheat. 1], 189, [6 L.Ed. 23]. "Commerce with foreign Nations," says Mr. Justice Daniel for the court in Veazie v. Moor, 14 How., 568, 573, "must signify commerce which, in some sense, is necessarily connected with these Nations, transactions which either immediately or at some stage of their progress must be extraterritorial."
The Pacific Ocean belongs to no one Nation, but is the common property of all. When, therefore, The Ventura went out from San Francisco or San Diego on her several voyages, she entered on a navigation which was necessarily connected with other Nations. While on the ocean her national character only was recognized, and she was subject to such laws as the commercial Nations of the world had, by usage or otherwise, agreed on for the government of the vehicles of commerce occupying this common property of all mankind. She was navigating among the vessels of other Nations and was treated by them as belonging to the country whose flag she carried. True, she was not trading with them, but she was navigating with them, and consequently with them was engaged in commerce. If, in her navigation, she inflicted a wrong on another country, the United States, and not the State of California, must answer for what was done. In every just sense, therefore, she was, while on the ocean, engaged in commerce with foreign Nations, and as such she and the business in which she was engaged were subject to the regulating power of Congress. (Emphasis added.)
102 U.S. at 543.
Thirty-two years later the United States Supreme Court in The Vessel Abby Dodge reaffirmed the principle that mere navigation of the high seas was foreign commerce. In that case, the "Abby Dodge" voyaged out of Tarpon Springs, Florida *370 into the Gulf of Mexico beyond the territorial waters of the United States onto the high seas to gather sponges. Because the vessel was navigating on the high seas, she was classified as being "engaged in foreign commerce."
So, while a very persuasive indication of the true meaning of a statute is the contemporaneous administrative construction put on the statute by an agency charged with administering it (in this instance the Department of Revenue and Texation), an administrative construction can not be given effect where it is contrary to or inconsistent with the legislative intent. And determining the Legislature's intent is for the courts.
The courts below were correct in concluding that the Legislature intended, when using the words, "foreign ... commerce" in the statutory exemption, that a vessel's venturing into the Gulf of Mexico beyond the territorial boundaries of the State of Louisiana and the United States would constitute engaging in foreign commerce.
The local taxing authorities urge alternatively that even if the Cheramie vessels are found to be "operating exclusively in foreign or interstate coastwise commerce," the sales tax exemption still does not apply because the statute requires that the material and supplies be loaded on the vessel contemporaneously with the sale to the vessel's owner or operator.
The pertinent part of Section 3.01(6) states that the exemption applies to the sales "where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance or operation thereof." The local taxing authorities do not dispute that the bulk of the materials and supplies were loaded upon the Cheramie vessels shortly after the sales. In fact the parties stipulated that "95% of materials, repairs, goods and services subject to the tax claim were ultimately used by the vessels." The court of appeal noted that
the services and supplies were invoiced to the vessels. The record also shows that the materials were destined for the vessels, and the testimony was that the items went on or were incorporated into the vessels. It is of no consequence that the goods may first be delivered to a warehouse before being loaded onto or incorporated into the vessels....
Sales Tax District No. 1 of Lafourche Parish v. Express Boat Co., Inc., 486 So.2d 947, 953 (La.App.1986).
The statutory exemption does not specify contemporaneous loading upon the ship or vessel, rather simply that the materials and supplies "are loaded." Even the Department regulations contemplate application of the exemption notwithstanding consummation of sale preceding the point at which the materials and supplies are loaded upon the vessel. Department of Revenue and Taxation article 47:305.1 states in pertinent part: "In order for the exemption to be recognized, actual delivery of the merchandise to dockside will be sufficient indication to the vendor that the merchandise will be loaded upon the ship or vessel."
The obvious intent of the statutory exemption is that the materials and supplies not only are purchased for the purpose of use or consumption in the maintenance and operation of the vessel, but also that the materials and supplies are in fact so used, as evidenced by their being loaded upon the vessels shortly after purchase.[7] In this case the stipulation ("95% of ... were ultimately used by the vessels") removes any doubt concerning the application of the exemption. There is no merit to relator's contention that the exemption only applies when the materials and supplies are loaded on the vessels contemporaneously with the sale to the vessel's owner or operator.
However, the courts below did err in one minor respect. Because the parties stipulated that 5% of the purchased materials and supplies were not ultimately used *371 by the vessels and thus were not exempt from taxation, the taxing authorities are entitled to a judgment condemning Express Boat to pay the sales tax on that 5% portion of the supplies and materials. Respondent in brief concedes as much. Therefore the case will be remanded to the district court for further proceedings in this regard only.
Furthermore, the parties are in agreement that the court of appeal should not have cast the local taxing authorities with the payment of court costs because the latter are political subdivisions granted exemption from the assessment of court costs by La.R.S. 13:4521.
Upon remand the district court will be free to reconsider whether court costs should be assessed in this case against defendant relator, against whom judgment will be rendered relative to the sales and use tax due on the 5% of materials and supplies not ultimately used on the vessels.

Decree
For the above reasons, the judgment is affirmed in part, but amended with respect to 5% of the claims, and remanded to the district court for further proceedings consistent with this opinion.
AFFIRMED IN PART; AMENDED IN PART; REMANDED TO THE DISTRICT COURT.
NOTES
[*] Honorable Pike Hall, Jr., Chief Judge of the Second Circuit Court of Appeal, sitting for Justice Harry T. Lemmon.
[1] La.R.S. 47:302-318 as supplemented by La. R.S. 47:321-325 (ch. 2a of Subtitle II of Title 4"Additional Sales Tax")
[2] La.R.S. 47:305.1(B); this section includes one other exemption, "laundry services performed for the owners or operators of such ships or vessels."
[3] As defined in the Outer Continental Shelf Lands Act 43 U.S.C. §§ 1331-1356, the Outer Continental Shelf is that part of the Continental Shelf lying three miles or more from the coast of the United States. 43 U.S.C. § 1331(a). According to 43 U.S.C. § 1332(2), the "character of the waters above the outer Continental Shelf as high seas.... shall not be affected." (Emphasis added.)
[4] Section 3.01(6):

The taxes imposed by this ordinance shall not apply to transactions involving the following tangible personal property:
* * * * * *
(6) The sales of materials and supplies to the owners or operators of ships or vessels operating exclusively in foreign or interstate coastwise commerce, where such materials and supplies are loaded upon the ship or vessel for use or consumption in the maintenance and operation thereof; nor to repair services performed upon ships or vessels operating exclusively in foreign or in interstate coastwise commerce; nor to the materials and supplies used in such repairs where such materials and supplies enter into and become a component part of such ships or vessels; nor to laundry services performed for the owners or operators of such ships or vessels operating exclusively in foreign or interstate coastwise commerce, where the laundered articles are to be used in the course of the operation of such ships or vessels.
[5] La.R.S. 47:305.1(D) states: "The Collector shall promulgate rules and regulations designed to carry out the provisions of this section. Any transaction not strictly in compliance with such rules and regulations shall lose the exemption herein provided."
[6] The "high seas" includes all water beyond the territorial seas of the United States and beyond the territorial seas of any foreign nation. J.G. Starks, An Introduction to International Law 232 (1963). The territorial seas of the United States extend from the coast three miles seaward. Feldman Colson, The Maritime Boundaries of the United States, 75 Am.J. Int'l L. 729, 730 (1981). See also supra note 3.
[7] On most occasions, the vendor, instead of delivering the materials and supplies directly to the vessel, delivered the materials and supplies to a Lafourche Parish storage facility in Galliano, La.