COVINGTON, Chief Judge.
These consolidated cases arise from a dispute concerning ad valorem property taxes levied by Terrebonne Parish (defendant and appellee herein) pursuant to LSA-R.S. 47:1951 upon various vessels owned by two different groups of appellants: Tidewater Enterprises, Inc., and TMS Acquisition Corporation; and Zapata Gulf Marine Service Corporation, Zapata Gulf Marine Operators, Inc., Marine Leasing Corporation, and Gulf Fleet Supply Vessels, Inc. The Tidewater appellants instituted the action under the provisions of LSA-R.S. 47:2108.1 to recover 1986 and 1987 Terre-bonne Parish property taxes paid under protest; the Zapata appellants likewise instituted the action under LSA-R.S. 47:2108.1 to recover 1987 property taxes paid under protest. All actions were consolidated and tried on stipulated facts. Appellants appeal from the decision of the trial court rejecting their claim that the taxes were erroneously paid.
Appellants based their claim in the lower court, and in turn base their claim here, upon two grounds. First, they argue that the vessels taxed by Terrebonne Parish were exempt from ad valorem property taxation pursuant to La. Const, of 1974, art. 7, § 21(C)(16)[2], because the vessels’ activities constitute international trade for the purposes of the exemption. Second, they argue that the taxing statute[3] is unconstitutional under the Commerce Clause as well as violative of Due Process and Equal Protection provisions of the United States Constitution[4], because it fails to apportion the tax based upon the vessels’ actual activities in the state and parish. The trial judge found that, based upon our earlier decision in A & P Boat Rentals, Inc. v. Cronvich, 361 So.2d 1260 (La.App. 1st Cir.), writ denied, 363 So.2d 923 (La.1978), the Zapata and Tidewater vessels were not engaged in “international trade” and therefore were not subject to the exemption; he further found that the statute was not unconstitutional.
Because we find that the vessels are engaged in international trade and therefore subject to the exemption, we need not render a decision as to the statute’s constitutionality; however, because the issue was thoroughly briefed by the parties and because it bears discussion, we will address it in this opinion.[5]
*822 FACTS
The facts pertinent to this decision were stipulated to by the parties, and are as follows. The vessels which are the subject of this litigation are the M/V TAD TIDE and M/V CRIMSON TIDE, owned by the Tidewater appellants; the PROSPECT SEAHORSE, the GULF FLEET NO. 59, the GULF FLEET NO. 253, the GULF FLEET NO. 290, the GULF FLEET NO. 291, and the GULF PRINCE II, all owned by the Zapata appellants. The assessor for Terrebonne Parish assessed these vessels for the unapportioned property tax based on the vessels’ presence in Terrebonne Parish on January 1 of the tax year. He testified that a vessel will be subject to the tax for the particular tax year if that vessel was located in a port in Terrebonne Parish even though it may operate exclusively between points in Terrebonne Parish and a foreign country; he also testified that if a vessel is located in or operates out of the state of Louisiana, he would not consider it to be engaged in international trade.
The vessels involved in the litigation are barges, tugboats and supply vessels operating almost exclusively between points in Louisiana and Texas and points in waters beyond the three-mile territorial limits, servicing the oil and gas industry. The Zapata vessels traveled to Puerto Rico, to Jamaica, to Mexico, and to West Africa; they serviced foreign-flagged drilling rigs; they always returned to ports in Louisiana or Texas. With very few exceptions, any rigs serviced by these vessels were beyond the three-mile territorial limit, and any voyages to points between Louisiana or Texas and other states were incidental to voyages beyond the three-mile limits.
The Tidewater vessels likewise operated exclusively between points in Louisiana and offshore platforms in the Gulf of Mexico; they did not operate between different points in Louisiana and other states. Most of their voyages were 40 to 140 miles. All of the appellant vessels navigated international waters, traveled international trade routes, and carried the American flag.
The M/V PROSPECT SEAHORSE is owned by a Delaware corporation; the M/V GULF FLEET NO. 253 is owned by a Missouri corporation. With the exception of one vessel, all of the Zapata and Tidewater vessels have their home port in Louisiana.
Services provided by Terrebonne Parish to the vessels benefiting them directly included dredging as well as the Houma Navigational Canal. The sheriff testified that his department provided rescue services, although he was not sure if such services were provided beyond the three-mile limit. In addition to direct services such as dredging, Terrebonne Parish provides indirect services such as those available to all taxpayers — education, roads, utilities, etc.
THE STATE CONSTITUTIONAL EXEMPTION
The issue before us to be resolved is whether vessel operations, consisting of servicing and supplying both foreign-flagged and domestic rigs beyond the three-mile territorial water limits, and, incident to that, the navigation of the high seas in international trade routes, constitute “international trade” pursuant to La. Const, of 1974, art. 7, sec. 21(C)(16) and thus entitle appellants to an exemption from ad valorem property taxes.
In A & P Boat Rentals, “international trade,” as the term is found in La. Const, of 1974, art. 7, sec. 21(C)(16), was defined as “commercial intercourse with foreign countries.” The vessel interests seeking the exemption in A & P Boat Rentals argued, as they do here, that they were involved with transporting passengers and goods beyond the seaward boundaries of Louisiana; since their activities were outside the three-mile territorial water limits, they should be exempt. We found that the *823 vessels in that case were not engaged in international trade.
In Sales Tax District No. 1 of the Parish of Lafourche v. Express Boat Company, Inc., 500 So.2d 364 (La.1987), an exemption for sales and use taxes rather than ad valorem property taxes was interpreted. The clause “ships or vessels operating exclusively in foreign and interstate coast-wise commerce” was defined to mean that navigation of the high seas constituted foreign commerce. Therefore vessels navigating international waters adjacent to Louisiana and Texas, encountering ships of foreign nations on international trade routes, and traveling 80 to 100 miles into the sea on the outer continental shelf, were found to be engaged in foreign commerce and entitled to the exemption at issue.
Appellants argue that their vessels’ operations fall into the Express Boat definition of “foreign commerce,” and that if they are engaged in “foreign commerce” by that standard, certainly they are engaged in “international trade” for purposes of the ad valorem property tax exemption, despite A & P Boat Rental’s holding that vessels engaged in similar operations were not engaged in “international trade.” Appellants seem to argue that the two cases cannot be reconciled.
In Zapata Gulf Marine Operators, we found that Express Boat Company did not overrule A & P Boat Rentals, and that the intent of the redactors of the ad valorem property tax exemption in the 1974 Constitution was to retain the original meaning of “overseas trade and commerce” when it substituted “international trade” in 1974.[6] In Zapata, the only language concerning the activities of the vessels in question appears at page 1254 as follows: “These vessels were used to commercially service the offshore petroleum industry in the Gulf of Mexico.” There is no discussion concerning the direction of the voyages, their duration, the entry of the vessels into international waters, or their travel through international trade routes.
In Rowan Companies, Inc. v. Louisiana State Tax Commission, 563 So.2d 951 (La.App. 1st Cir.), writs denied, 567 So.2d 1130 (La.1990), we held that a vessel (a large offshore drilling rig) which was designed to be used in the North Sea was engaged in foreign commerce for the purposes of the exemption. However, because the rig was found to be subject to the exemption in the Louisiana Constitution for ad valorem taxes for “goods, commodities, and personal property in public or private storage while in transit through this state which are moving in interstate commerce,” La. Const. of 1974, art. 7, sec. 21(D)(3), Rowan does not necessarily stand for the proposition that an offshore drilling rig designed to be used in the North Sea is engaged in “international trade.”
We find that the cases are not irreconcilable because they involve different facts from which different conclusions were drawn by the courts. Even in Express Boat, the vessels were held to be engaged in interstate and foreign commerce. 500 So.2d at 370.
The vessels’ activities are not identical in the two cases; in A & P Boat Rentals, there was next to no evidence that the vessels were even engaged in foreign commerce, as defined in Express Boat to mean navigation of the high seas. The boats were dispatched from various ports in Louisiana; there is nothing in the opinion to indicate the extent of the navigation, how far out the vessels traveled, whether they serviced foreign-flagged rigs, or how long the voyages’ duration was.
In Express Boat, the vessels’ activities were described as encountering ships of foreign nations, traveling through international trade routes, and operating in points on the outer continental shelf beyond the three mile territorial limit.
We believe that in the instant case, appellants have proven that they are engaged in “international trade” and are not operated in the coastal trade of the United States *824 because they do not travel between different points between states of the United States. If anything the facts are stronger than in Express Boat. These vessels spend much of their time in international waters. For example, one vessel spent eight months off the coast of West Africa. When they discharge cargo, perform operations on foreign-flagged drilling rigs, and carry supplies and passengers into waters of foreign countries, they are engaged in “international trade” as defined in A & P Boat Rentals; they are participating in commercial intercourse with foreign countries. The facts are distinguishable from A & P Boat Rentals, where there was no evidence of foreign and interstate commerce, much less “international trade.”[7] We are aware that tax exemptions are strictly construed; however, we believe that the taxpayers in this case have carried their burden. Ethyl Corporation v. Collector of Revenue, 351 So.2d 1290 (La.App. 1st Cir.1977), writ denied, 353 So.2d 1035 (La.1978).
THE CONSTITUTIONALITY OF LSA-R.S. 47:1951 ET SEQ.
Appellants raise several arguments against the constitutionality of LSA-R.S. 47:1951, the unapportioned ad valorem property tax under which the taxes at issue herein were levied. Appellants argue, first, that under the Commerce Clause of the United States Constitution, the levy of the unapportioned property tax interferes with interstate and foreign commerce because vessels engaged in interstate commerce on the inland waterways pursuant to LSA-R.S. 47:1851 [8] are taxed on an apportioned basis, while oceangoing vessels engaged in foreign commerce are not. Incident to this argument is the issue whether, under the Due Process clause, any state other than the state of the owner’s domicile can tax a domestically-owned ocean-going vessel.
Appellants go on to argue that the levy of the tax is unconstitutional under Due Process and Equal Protection provisions of the United States Constitution because of the uneven way in which the assessor applies the Louisiana constitutional exemption for vessels engaged in international trade; further, that the levy of the tax is unconstitutional because the vessels’ activities on the Outer Continental Shelf are subject to federal jurisdiction, which preempts Louisiana’s taxing power.
The most troubling of the arguments raised by appellants against the constitutionality of the statute, and the one which requires our attention here, is the question of apportionment. In Complete Auto Transit, Inc. v. Brady, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), a four-part test was enunciated to determine whether a tax violated the Commerce Clause. The activity in question must (1) be sufficiently connected to the state to justify the tax, which in turn must (2) be fairly related to benefits provided to the carrier, (3) not discriminate against interstate commerce and (4) be fairly apportioned. This test, “while responsive to Commerce Clause dictates, encompasses as well the Due Process requirement that there be a ‘minimal connection’ between *825 the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise.” Trinova Corporation v. Michigan Department of Treasury, — U.S. -, 111 S.Ct. 818 at 828, 112 L.Ed.2d 884 (1991), citing Mobil Oil Corporation v. Commissioner of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980).
Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 99 S.Ct. 1813, 60 L.Ed.2d 336 (1979), went on to expand the test as applied to foreign-owned instrumen-talities of foreign commerce, adding two additional inquiries: whether the tax, notwithstanding apportionment, creates the substantial risk of interstate multiple taxation, and whether the tax prevents the federal government from “speaking in one voice in regulating foreign trade.” Japan Line, 441 U.S. at 452, 99 S.Ct. at 1823.
Appellants argue that the Louisiana taxing scheme violates the test of Complete Auto because there is an insufficient nexus between their vessels and Terrebonne Parish to justify an unapportioned tax, based on the vessels’ absence from the state for long periods during the relevant time period. Second, they argue that the tax is unfairly apportioned under Complete Auto because the tax reaches both the in-state and foreign or interstate components of the vessels’ activities, and because there is a risk of multiple taxation since the vessels spend time during the tax year in other jurisdictions which could potentially impose a tax. Third, they argue that the tax as applied discriminates against foreign or interstate commerce because vessels traveling in interstate commerce on inland waterways are taxed based on the number of miles traveled in Louisiana, while vessels traveling in foreign commerce on the high seas are taxed for their full value, with no provision for apportionment. Fourth, they argue that the tax bears no relationship to the taxpayers’ presence in the state nor the benefits they receive, under Complete Auto.
Historically, ocean-going vessels have been taxed only at one situs: the domicile of their owner. The rule was inflexible that unless the vessels established a new situs elsewhere, they could not be taxed other than at their owner’s domicile, regardless of actual domicile of the vessel.
This rule, known as the “home port rule,” was first enunciated in the 19th century in Hays v. Pacific Mail Steamship Co., 17 How. 596, 58 U.S. 596, 15 L.Ed. 254 (1911), and was followed in various Supreme Court opinions, including Southern Pacific Company v. Commonwealth of Kentucky, 222 U.S. 63, 32 S.Ct. 13, 56 L.Ed. 96 (1911). The rule’s origin appeared to be not so much the Constitution, but the common-law jurisdiction to tax. Japan Line, 441 U.S. at 443, 99 S.Ct. at 1818. It could also be argued that the rule’s underlying rationale was the heightened federal concerns present when foreign commerce is involved, which dictated that only one jurisdiction be allowed to tax an ocean-going vessel, thus avoiding conflicts between foreign and American regulation of commerce. See, Scandinavian Airlines System, Inc. v. County of Los Angeles, 56 Cal.2d 11, 14 Cal.Rptr. 25, 363 P.2d 25 (1961), cert. denied, 368 U.S. 899, 82 S.Ct. 175, 7 L.Ed.2d 94 (1961).
The rule was gradually eroded as it concerned domestic instrumentalities of interstate commerce, and the doctrine of apportionment emerged in its place. In Ott v. Mississippi Valley Barge Line Co., 336 U.S. 169, 69 S.Ct. 432, 93 L.Ed. 585 (1949), the Supreme Court held that barges and towboats whose home port was outside Louisiana, but which were not taxed by the state of incorporation and which were engaged in interstate commerce on inland waterways, could be taxed by Louisiana on an apportioned basis. Ott specifically did not reach the question of “the taxability of ocean carriage,” but confined its decision to “transportation on inland waters.” Ott, 336 U.S. at 173, 69 S.Ct. at 434.
In Japan Line, Ltd., the Supreme Court refused to base its analysis upon the “home port” doctrine. That case involved a foreign-owned instrumentality of foreign commerce, which California sought to tax on an apportioned basis; the shipping containers *826 involved were actually being taxed in Japan. The taxpayers argued that, under the “home port” rule, they could not be taxed elsewhere than Japan and therefore were immune from taxation in California. The Supreme Court, in discussing this argument, stated:
If an oceangoing vessel could indeed be taxed only at its home port, taxation by a nondomiciliary State logically would be barred, regardless of whether the vessel were domestically or foreign owned, and regardless of whether it were engaged in domestic or foreign commerce. In Hays itself, the vessel was owned in New York and was engaged in interstate commerce through international waters. There is no need in this case to decide currently the broad proposition whether mere use of international routes is enough, under the “home port doctrine,” to render an instrumentality immune from tax in a domiciliary State. The question here is a much more narrow one, that is, whether instrumentalities of commerce that are owned, based, and registered abroad and that are used exclusively in international commerce, may be subjected to apportioned ad valorem property taxation by a State.
The opinion went on to note that it did not reach questions of the taxability of foreign-owned instrumentalities engaged in interstate commerce, or of domestically owned instrumentalities engaged in foreign commerce. Japan Line, Ltd., 441 U.S. at 445, n. 7, 99 S.Ct. at 1819, n. 7.
We agree with appellants that Louisiana’s taxing scheme depends upon the continued viability of the “home port” doctrine, not so much as a tool of constitutional analysis in and of itself but as a point of departure to determine whether Louisiana’s failure to apportion its ad valorem property tax, as applied to domestic vessels engaged in foreign commerce and traveling the high seas, is violative of the Commerce Clause as well as Due Process and Equal Protection.
If no other state can tax these vessels, practically speaking there would be no need to apportion because there is no risk of multiple taxation.[9]
It is only multiple taxation of interstate operations that offends the Commerce Clause. And obviously multiple taxation is possible only if there exists some jurisdiction, in addition to the domicile of the taxpayer, which may constitutionally impose an ad valorem tax.” [Citation deleted.]
Central Railroad Company v. Commonwealth of Pennsylvania, 370 U.S. 607 at 612, 82 S.Ct. 1297 at 1301-1302, 8 L.Ed.2d 720 (1962).
In this case, although Texas could possibly tax the vessels, and certainly Delaware and Missouri could, if the “home port” rule remains valid, there is no risk of multiple taxation. None of the vessels involved in this litigation are in fact being taxed elsewhere, unlike the shipping containers at issue in Japan Line.
We believe that, because “foreign commerce is pre-eminently a matter of national concern,” Japan Line, Ltd., 441 U.S. at 448, 99 S.Ct. at 1821, the “home port doctrine” remains alive insofar as domestic oceangoing vessels engaged in foreign commerce are concerned. Were more than one jurisdiction able to tax such vessels, it would be difficult to impose a uniform national rule.
In approving state taxes on the instru-mentalities of interstate commerce, the Court consistently has distinguished oceangoing traffic; these cases reflect an awareness that the taxation of foreign commerce may necessitate a uniform national rule. Japan Line, Ltd. at 448, 99 S.Ct. at 1821.
And if no other jurisdiction may tax, or is taxing these vessels, there is no need for Louisiana to apportion the tax. The dis *827 tinction between LSA-R.S. 47:1951 and between LSA-R.S. 47:1851 et seq. apportioning taxes as to vessels engaged in interstate commerce in inland waterways, is reflective of the ever-present tension between the respective powers of states and the federal government to regulate commerce. There is no Equal Protection or Due Process violation because the statutes do not make a distinction between intrastate and interstate commerce, but between foreign and interstate commerce — a distinction in keeping with the heightened concerns present when foreign commerce is involved.
As to appellants’ arguments regarding a lack of a sufficient nexus with the taxing jurisdiction to justify an unapportioned tax, and its related arguments concerning the lack of a relationship between the tax and the taxpayers’ presence in the state, we find that there is sufficient evidence in the record to indicate that the vessels receive benefits from Terrebonne Parish justifying the tax. The thrust of appellants’ arguments is that because the vessels spend so much time outside the taxing jurisdiction, an unapportioned tax cannot be supported. Because we find that the unappor-tioned tax does not violate the Commerce Clause, it follows that appellants’ Due Process arguments, which are closely related to the Commerce Clause analysis in any event, must also fall.
We hope by this analysis we may provide some guidance to lower courts, which may be confronted with similar issues in the future. However, we reiterate that, because of our holding that the taxpayer vessels are entitled to the ad valorem property tax exemption as they are engaged in “international trade,” we need not, and should not, rule on the issue of the constitutionality of the taxing statute. Moore v. Roemer, 567 So.2d 75 (La.1990).
The judgment of the trial court is reversed. Defendants-appellees are ordered to refund the money paid by plaintiffs-appellants to them, together with interest at the rate of two percent per annum as provided by LSA-R.S. 47:2110 A, from the date of payment of said funds to the date of refund. Costs of this appeal in the amount of $967.95 are assessed against defendants-appellees.
REVERSED AND RENDERED.

. La. Const, of 1974, art. 7, § 21(C)(16) provides the following exemption from ad valorem taxation:
ships and oceangoing tugs, towboats, and barges engaged in international trade and domiciled in Louisiana ports. However, this exemption shall not apply to harbor, wharf, shed, and other port dues or to any vessel operated in the coastal trade of the states of the United States.

. LSA-R.S. 47:1951 provides:
All property situated within the state, except such as is expressly exempted from taxation by law, shall be subject to taxation on the basis of the assessed valuation thereof.
Property, not otherwise exempt from taxation, of all nonresident persons, firms, corporations, partnerships, associations, or companies is hereby declared subject to assessment and taxation, in the same manner as all other property in the state.
Notes, judgments, accounts, and credits of non-resident persons, firms, corporations, partnerships, associations, or companies doing business in the state, originating from the business done in this state, are property with its situs within this state; provided this paragraph shall not affect the levying, assessing, and collecting of taxes upon fire, life, or other insurance companies.

. Appellants also argue in the alternative that the tax is subject to federal preemption under the Outer Continental Shelf Lands Act; however, we need not reach this issue.

. The trial judge expressed some concerns, in his oral reasons for judgment, about the stat *822 ute’s constitutionality in that it failed to apportion. In previous decisions of this court, the issue has not been fully briefed nor squarely before us and we have not discussed it. See, Zapata Gulf Marine Operators, Inc. v. Louisiana Tax Commission, 554 So.2d 1253 at 1260, n. 5 (La.App. 1st Cir.1989), writ denied, 559 So.2d 1357 (La.1990); A & P Boat Rentals, 361 So.2d 1260.

. La. Const. of 1921, art. 10, sec. 4(3) read as follows:
... ships and ocean-going tugs, towboats and barges engaged in overseas trade and commerce and domiciled in Louisiana ports.

. We note, that for federal purposes, the Carriage of Goods by Sea Act, 46 U.S.C.App. sec. 1312 defines “foreign trade" as "the transportation of goods between the ports of the United States and ports of foreign countries.” Certainly a drilling rig situated in international waters off the shore of Jamaica, Africa or Mexico, may be analogized to a "port" of a foreign country.

. LSA-R.S. 47:1851 B. defines "barge line and towing company" as follows:
Barge line and towing company means any resident or nonresident company, whether domiciled in this state or outside this state, whose boats, barges, or other watercraft either owned or leased are engaged in the business of water transportation as a common, contract, or private carrier over the inland waterways of this state on a regular basis. LSA-R.S. 47:1855 D(6) reads as follows:
With respect to any company operating both inside and outside this state, the apportionment of the appraised value of the property which shall be assessed in this state shall be determined by one or the average of two or more of the following percentages:
[[Image here]]
The miles traveled by air or water by company property within this state divided by the miles traveled by air or water everywhere.
Thus, vessels traveling in interstate commerce on the inland waterways of this state are taxed on an apportioned basis.

. The Supreme Court has held that even where no actual multiple taxation is present, the constitutionality of a tax may still be challenged and a burden on interstate commerce may be found. Mobil Oil Corporation v. Commissioner of Taxes of Vermont, 445 U.S. 425, 100 S.Ct. 1223. To this extent, the trial judge’s ruling on the constitutionality of the tax at issue herein, insofar as it was based on the fact no actual multiple taxation was present, is erroneous.