871 So.2d 1171 (2004)
PONTCHARTRAIN MATERIALS CORPORATION
v.
The PLAQUEMINES PARISH GOVERNMENT, Geessler G. Saul, Sales Tax Supervisor of the Plaquemines Parish Government and Revenue Recovery Group, Inc.
No. 2003-CA-1444.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 2004.
*1172 Wayne G. Zeringue, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, LA, for Plaintiff/Appellee.
David A. Woolridge, Jr., Roedel, Parsons, Koch, Blache, Balhoff & McCollister, Baton Rouge, LA, for Defendant/Appellee.
Johnette L. Martin, Assistant Parish Attorney, Plaquemines Parish Government, Belle Chasse, LA, for Defendant/Appellant.
*1173 (Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, and Judge Pro Tempore MOON LANDRIEU).
CHARLES R. JONES, Judge.
This appeal arises out of an action by Pontchartrain Materials Corporation (hereinafter "Pontchartrain") for a refund of sales and use taxes paid to the Plaquemines Parish Government (hereinafter "PPG") for freight charges and lease payments. The appellant, PPG, now seeks suspensive appeal of the district court judgment denying its motion for new trial in favor of the appellee, Pontchartrain. Alternatively, Pontchartrain cross-appeals the motion for partial summary judgment in favor of PPG denying its claim for damages and attorney's fees under 42 U.S.C. § 1983 and § 1988.

Procedural History
Pontchartrain initiated a suit against PPG, Geesler G. Saul, and Revenue Recovery Group, Inc. (hereinafter "RRG") for the return of sales and use taxes paid under protest. Pontchartrain also claimed damages and attorney's fees pursuant to 42 U.S.C. § 1983 and § 1988 on the grounds that it was deprived of its federally protected property rights. Subsequently, PPG filed a motion for partial summary judgment and/or motion to strike seeking dismissal of Pontchartrain's claims for damages and attorney's fees. In response, Pontchartrain moved for summary judgment on the issue of recovery of the taxes it paid under protest, as well as on its claims for damages and attorney's fees.
The district court granted Pontchartrain's Motion for Summary Judgment, and ordered PPG to return all taxes, interest, and penalties paid under protest. The court further granted in part PPG's Motion for Summary Judgment, dismissing Pontchartrain's claims for damages and attorney's fees, and rendering "moot" PPG's Motion to Strike.
Subsequently, PPG filed a Motion for New Trial, which was denied by the district court. PPG then filed a Motion for Appeal, and Pontchartrain responded with a cross-appeal of the partial summary judgment in favor of PPG. The judgment of the district court denying PPG's Motion for New Trial and the partial summary judgment in favor of PPG are the subjects of the matter now before this Court.

Facts
Pontchartrain is a Louisiana Corporation, domiciled in Orleans Parish at 3819 France Road, New Orleans, in what is referred to as Slip 4 on the Industrial Canal. The corporation is engaged in the business of selling aggregate materials such as limestone and crushed concrete, which it stores in its Orleans Parish facility. In transacting the sale of aggregate materials, Pontchartrain asserts that customers may transport the materials themselves, or they may have the materials delivered by Pontchartrain. While Pontchartrain does charge for transportation and delivery through a "freight charge" that is separately stated on the invoice, the sales price remains the same whether the customer chooses to transport the materials or have them delivered.
In addition, Pontchartrain also employs trucks and barges to aid in the delivery of aggregate materials. The barges, some of which are leased, are primarily used in the transportation of aggregate materials from Paducah, Kentucky, to Pontchartrain's facilities in Orleans Parish. However, they are infrequently used in Plaquemines Parish.
Pursuant to a contract for Audit/Examination Services dated November 14, 1995, RRG was retained by PPG, St. Charles Parish, St. Helena Parish, and Tangipahoa *1174 Parish, as an independent contractor. RRG performed an audit of Pontchartrain to determine whether there were any unpaid taxes for the period of January 1, 1998 through December 31, 1999. On December 18, 2001, after several unsuccessful requests for audit materials by RRG, Pontchartrain was presented with a tax assessment in the amount of $50,996.83 for delinquent sales/use taxes, penalties, and interest resulting from the freight charges and leasing of barges used in their deliveries. Pontchartrain subsequently paid PPG the full amount of the assessment under protest.

Discussion
La. C.C.P. art. 1972(1) provides that a new trial shall be granted, upon contradictory motion of any party, when the verdict or judgment appears clearly contrary to the law and evidence. The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Martin v. Heritage Manor South Nursing Home, 00-1023 (La.4/3/01), 784 So.2d 627, 630.
In the present case, PPG argues that its Motion for New Trial should have been granted on the grounds that the judgment of the district court granting summary judgment in favor of Pontchartrain, is contrary to the law and the evidence. In its first assignment of error, PPG argues that the district court erred in finding that Pontchartrain could deduct delivery charges from the sales price. We find that this argument is without merit.
Pursuant to La. R.S. 47:301(13)(a), "sales price" is defined as:
The total amount for which tangible personal property is sold, less the market value of any article traded in including any services, except services for financing, that are a part of the sale valued in money, whether paid in money or otherwise, and includes the cost of materials used, labor or service costs ...
In Plaquemines Parish Ordinance No. 98-117 § 14-51, PPG imposes a tax on the sale at retail of tangible personal property at the rate of 1% of the sales price of each item sold in Plaquemines Parish. § 14-41 of the ordinance further defines "sales price" in language that is identical to that of La. R.S. 47:301(13)(a). According to Sales Tax Dist. No.1 of LaFourche Parish v. Express Boat Co., 500 So.2d 364, 367 (La.1987), when an ordinance is essentially copied from the Louisiana State Sales and Use Tax Statute, "those ordinances are deemed to have incorporated the interpretations of the statutes on which they are based." Therefore, any prior interpretation of the state sales and use tax statute will be deemed to be an interpretation of PPG's local ordinance.
PPG contends that when an otherwise non-taxable service is incidental to the sale of tangible personal property, that service is included in the sales tax base, and is therefore, subject to sales tax. To support this argument, PPG relies on Monsanto Co. v. St. Charles Parish School Bd., 94-2145 (La.2/20/95), 650 So.2d 753, wherein the court determined whether the process of converting wet CO2 to dry CO2 was a taxable service as defined by the state sales and use tax statutes. The court concluded that since the parties contracted for dry CO2, the process that converted wet CO2 to dry CO2 was incidental to Monsanto's purchase of the product. Monsanto, 650 So.2d at 757.
In agreement with the district court, we also find that PPG's reliance on Monsanto is misplaced. In Monsanto, the conversion process was necessary in order to deliver the final product of dry CO2. However, in the case at bar, Pontchartrain charges the same for aggregate materials regardless of how the materials are transported *1175 after their sale. It is axiomatic that the transportation charges at issue in the present case are not a necessary part of the sale, and thus, are not akin to the charges for the conversion process in Monsanto. Therefore, the freight charges would not form a part of the sales tax base for the reasons set forth in Monsanto.
PPG further argues that the district court incorrectly interpreted the holding of Pensacola Const. Co. v. McNamara, 558 So.2d 231 (La.1990), in determining that Pontchartrain was not subject to sales taxes. In Pensacola, stone was sold in Kentucky f.o.b. point of origin, and transportation of the stone to Louisiana was rendered by carriers whose services were arranged by the Louisiana buyer. The Louisiana Supreme Court held that separately stated transportation charges were not a taxable part of the "cost price."[1] In reaching its decision, the court particularly looked to the language of La. R.S. 47:301(3)(a) defining "cost price" as:
The actual cost of the articles of tangible personal property without any deductions there from on account of the cost of materials used, labor, or service cost, except those service costs for installing the articles of tangible personal property if such cost is separately billed to the customer at the time of installation, transportation charges, or any other expenses whatsoever, or the reasonable market value of the tangible personal property at the time it becomes susceptible to the use tax, whichever is less.
In contrasting the language of La. R.S. 47:301(3) with the definition of "sales price", the court concluded that an assessment of use tax was unconstitutional since there was no inclusion of transportation charges in the calculation of "sales price."
PPG further contends that because Pensacola addressed an interstate transaction, it is inapplicable to the present case. Although PPG argues that Pensacola addresses the constitutionality of a tax on freight charges only insofar as it applies to interstate transactions, the Louisiana Supreme Court discussed the constitutionality of a use tax, and not sales tax. The plain language used to define sales price does not provide for the inclusion of transportation and freight charges as part of its taxable base. La. R.S. 47:301(13). Therefore, this Court finds that the district court did not err in concluding that freight charges were not a part of the "sales price" for purposes of imposing a tax.
In its second assignment of error, PPG maintains that the district court erred in concluding that PPG was bound by the letter ruling or opinion of the Department of Revenue. However, this assertion is incorrect. In Pensacola, the court clearly stated that it found the imposition of a use tax on separately stated freight charges to be unenforceable because there was no parallel assessment of a sales tax. Subsequent to this case, the Revenue Department issued several rulings stating that it interpreted Pensacola to mean that separately stated charges cannot be taxed as either part of the "sales price" or the "cost price" when the transportation of goods after the sale is designated by the buyer. Louisiana Tax Topics, Vol. 11, No. 3. Although PPG argues to the contrary, the Department of Revenue's interpretation of La. R.S. 47:301 is in fact enunciated by the holding in Pensacola.
In the case at bar, the district court's Reasons for Judgment state:

*1176 PPG further argues that this Court is not bound by the opinion and statements of the Dept. of Revenue. It is up to the courts, not the Dept. of Revenue, to determine if a certain regulation or position of the state or local jurisdiction is a correct interpretation of the law. See South Central Bell Telephone Co. [v. Barthelemy], 643 So.2d 1240 (La.1994).
* * *
Nevertheless, after considering all of the above, this Court finds that the ruling in Pensacola is broad enough to control.
* * *
And since the Pensacola ruling, this Court is convinced that the public policy and actual practice of the La. Dept. of Revenue is entitled to "substantial" and "decisive weight."
While the district court may have found the rulings of the Department of Revenue to be persuasive, the record indicates that it viewed the decision rendered in Pensacola as being "broad enough to control." Thus, the Department of Revenue rulings were not given the effect of law in the judgment rendered by the district court.
In its third assignment of error, PPG argues that the district court erred in finding that the rentals paid on leasing equipment engaged in business operations within Plaquemines Parish are not subject to its taxing jurisdiction. PPG contends that the leased or rented barges used by Pontchartrain should be subject to tax in accordance with Ordinance No.98-117, § 14-51(3). The ordinance imposes taxes on the lease or rental of tangible personal property at a rate of 1% of the rental proceeds and is virtually identical to the language of La. R.S. 47:302(B)(1). Accordingly, any interpretation of La. 47:302(B)(1) is incorporated into the Plaquemine Parish Ordinance on lease tax. See Sales Tax Dist. No.1 of LaFourche Parish v. Express Boat Co., supra.
In Lafayette Parish School Bd. v. Market Leasing Co., Inc., 440 So.2d 81 (La. 1983), the parish brought an action against the lessor to collect taxes allegedly due on the lease of vehicles. Although the physical presence of the vehicles in the parish was a consideration of the court, it primarily focused its analysis on the domicile of the lessee in determining whether a lease tax could be assessed. The court stated:
To avoid multiple taxation, it is necessary to identify one situs for the act of leasing. The "act of leasing" takes place where the vehicle is kept; that is, where the lessee can be located if lease payments are missed or if the leased property is damaged. The parish declared by the lessee as his domicile, residence, or business address, the place where he can be found, is entitled to receive tax on the proceeds from the lease.
Market Leasing, 440 So.2d at 86.
PPG contends that Market Leasing is inapplicable to the present case because the court applied its analysis to a lessor, and not a lessee. This Court finds no merit in this argument. While Market Leasing addressed a lessor, the court stated that, as lessor, Market Leasing was the proper party to bear the obligation of collecting a tax on vehicles leased within the parish. Id. at 86. However, the role of the lessor, as the collector of taxes, should not be confused with that of the lessee, who is actually the taxpayer. Since the lessee in Market Leasing was domiciled outside of Lafayette Parish, the Supreme Court ultimately determined that the parish was not entitled to impose a tax on the lease payments. Id. In the present case, the facts clearly establish that Pontchartrain is a lessee who is domiciled in Orleans Parish. Therefore, the right to *1177 collect lease taxes remains with the taxing authority of Orleans Parish.
PPG further argues that the taxes assessed to Pontchartrain should be permitted since they are equitably apportioned in accordance with the time the barges remained in each parish. While the barges used in Pontchartrain are arguably not as mobile as the vehicles discussed in Market Leasing, the Louisiana Supreme Court resolved the potential for multiple taxation by designating the domicile of the lessee as the proper place to receive a tax on the proceeds of a lease. Market Leasing establishes that the proper site to collect a lease tax from Pontchartrain is Orleans Parish. Thus, the mere fact that PPG deems its tax assessment to be equitable is irrelevant.
In its fourth assignment of error, PPG contends that the district court erred in granting Pontchartrain's Motion for Summary Judgment and denying PPG's Motion for New Trial. However, for the reasons herein assigned, we find that this assignment of error is without merit.
Conversely, Pontchartrain argues on cross-appeal that because of PPG's arbitrary and deliberate exaction of taxes, PPG deprived Pontchartrain of its property rights and violated the due process protections of the Fourteenth Amendment to the United States Constitution. In its only assignment of error, Pontchartrain contends that the district court erred in dismissing its claims for damages and attorney's fees under 42 U.S.C. § 1983 and § 1988.
In pertinent part, 42 U.S.C. § 1983 provides:
Every person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory of the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit or equity, or other proper proceeding for redress.
42 U.S.C. § 1988 further provides that the prevailing party in an action for deprivation of rights may receive a discretionary award of attorney's fees as part of the costs.
In McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Fla., 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), the United States Supreme Court held that if a state penalizes taxpayers for failure to remit their taxes in a timely fashion, thus requiring them to pay first and obtain review later, the due process clause requires that the state afford a meaningful post-payment remedy for taxes paid. In McKesson, the state of Florida failed to provide a refund or any other form of postpayment relief to taxpayers who were wrongfully assessed excise tax through a scheme that was later declared unconstitutional. Id. The Supreme Court stated, "[I]n the future, States may avail themselves of a variety of procedural protections... such as providing by statute that refunds will be available to only those taxpayers paying under protest ...". Id. at 50, 110 S.Ct. at 2257.
In the instant case, PPG Ordinance No. 98-117, § 14-171 provides that:
A right of a action is hereby created to afford a remedy at law for any dealer aggrieved by the provisions of this article; in case any such dealer resisting the payment of any amount found due.... such dealer shall pay the amount found due by the collector and give the collector notice ... of his intention to file suit for the recovery of same ... If *1178 the dealer prevails, the collector shall refund the amount to the claimant, with interest at the rate provided in R.S. 33:2718.
The fact that Pontchartrain was allowed to make a payment of taxes under protest and receive a refund of taxes paid distinguishes it from McKesson, wherein no resolution was afforded to the taxpayer. In accordance with the principles of due process, PPG's post-deprivation procedure provides taxpayers with a clear remedy by which they may refute the deprivation of tax money. See McKesson, 496 U.S. at 51, 110 S.Ct. at 2258. Therefore, PPG was not in violation of Pontchartrain's due process rights, as it provided sufficient remedy pursuant to ordinance No. 98-117, § 14-171.

DECREE
Thus, for the reasons stated herein, we affirm the judgment of the district court denying the Plaquemines Parish Government's Motion for New Trial, and granting its Motion for Partial Summary Judgment.
AFFIRMED.
NOTES
[1] A use tax is calculated upon the "cost price" of tangible personal property which is not sold within the state, but rather used, consumed, distributed, or stored in Louisiana. La. R.S. 47:302(A)(2).